Lee Otis JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 42279.

Court of Criminal Appeals of Texas.

Nov. 5, 1969.

Rehearing Denied Jan. 7, 1970.

---

Will Gray, Bob C. Hunt, Bobby H. Caldwell, George C. Dixie, Houston, for appellant.

Carol S. Vance, Dist. Atty., William W. Burge, Asst. Dist. Atty., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The offense is the unlawful sale of marihuana; the punishment, thirty years.

Officer Williams, a witness for the state, testified that while acting as an under cover agent he met the appellant on March 1, 1968, and appellant asked him for a ride and he then took the appellant to his apartment. Around midnight, March 7–8, 1968, the appellant had Williams drive him to a friend's house for the purpose of obtaining some marihuana. After appellant returned from the house to the car he gave[1] a marihuana cigarette to Williams and told him not to let the police catch him with it because he "could get twenty years for this." The appellant had five other cigarettes in his hand at the time.

The appellant did not testify or call any witnesses in his behalf on the main trial.

At the punishment stage before a jury, the state introduced evidence that the appellant had been convicted for felony theft in 1964.

The first ground of error is that the trial court erred in overruling appellant's verified motion for a change of venue which alleged that there existed in Harris County so great a prejudice against him that he could not obtain a fair and impartial trial. The motion was supported by two affidavits. The state controverted the motion.

In support of his motion, the appellant called three witnesses.

The first witness was Carol Vance, the District Attorney of Harris County. He testified that this case had received little, if any, publicity to his knowledge, and he had not heard anyone mention it except those about the courthouse, and he had not heard any discussions or opinions expressed about this case; that there had been some brief news articles in the local paper about this case; that the appellant had received some publicity in connection with the disturbance at Texas Southern University (hereafter referred to as T.S.U.), a peace bond hearing arising out of a disturbance at the city dump and a claim of abuse by the police; that he had heard very little about the organizations to which appellant belongs and any demonstrations or agitations by them; that he filed a motion for a change of venue in a case involving T.S.U. Vance estimated the population of Harris County to be around one and three-fourths million persons.

The witness Vance expressed the opinion that the appellant could get a fair and impartial trial in Harris County.

Reverend Hillary Smith testified that he had lived in Harris County for two and one-half years and was the Superior of the Monastery in Sharpstown and on weekends worked in two or three Catholic churches in Sharpstown. He testified that there

---

1. In defining a sale of marihuana, Vernon's Ann.P.C. Art. 725b, § 1(10), provides: " 'Sale' includes barter, exchange, or gift, or offer therefor, and, each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee."

were strong feelings in Sharpstown against demonstrations; that he heard appellant's name mentioned in Sharpstown and at the cathedral downtown in connection with demonstrations and the riots at T.S.U., and he had talked with two or three dozen persons about demonstrations and police harassment; that there is a strong feeling against marihuana in general and that there is a feeling that those who demonstrate take marihuana; that he saw a newspaper report of appellant being charged with possession of marihuana and had three or four telephone conversations about it. He expressed the opinion that appellant could not receive a fair and impartial trial in this case in Harris County.

Martin Elfant, a senior consultant for a Canadian life insurance company, who had lived in Harris County sixteen years and had been acquainted with the appellant two years, testified that in the past year or so he had heard the appellant's name mentioned many times in connection with demonstrations by militant black people and in regards to the T.S.U. matter but that it was predominantly in the business area in the downtown and southwest areas of the county; that he had provoked discussions about demonstrations and talked to hundreds of persons about them, found them both favorable and unfavorable toward civil rights, T.S.U., and the appellant, but a majority were opposed; that he had a telephone call from a client and friend the day appellant was charged with possession of marihuana who said it did not make any difference whether he was guilty because he was guilty of something; that a majority of the people he talked with correlated appellant's name with the T.S.U. demonstrations and they are opposed to him and think he ought to be put away, and that he could not receive a fair trial in Harris County.

On cross-examination, he testified that he had known the appellant two years and most of his close friends are appellant's friends which are "possibly half a dozen"; that he is vitally concerned with the civil rights movement therefore he discusses it,

and admits that he had prejudice and bias in favor of the appellant; that the marihuana case has not been discussed, but people think he ought to be put away; that if a prospective juror had not heard of the appellant and did not associate him with other incidents he could get a fair trial.

The state called two witnesses in contravention of appellant's motion.

Bob Tutt, a news reporter for the Houston Chronicle for eleven years, covering the criminal courts for the past two years, testified that Harris County had a population between one and one-half and two million persons; that he had had numerous discussions with persons concerning pending cases, and had heard no expressions from anyone outside the courthouse and newspaper people that appellant could not get a fair trial; that there had been about four newspaper stories about this case, but there had been a story about a peace bond and other incidents; that no indictments were returned against appellant or the group of which he was a member in the T.S.U. matter. He expressed the opinion that because of the cross-section, diversity, and cosmopolitan nature of the population, the appellant could get a fair trial in Harris County.

Tom Fox, a radio and television reporter for seventeen years with courthouse assignments, testified that the news of appellant's arrest on this charge had been very small, and he had not heard anyone express an opinion that appellant could not get a fair trial in this case; and further stated that a jury could be selected who had never heard of the appellant in any way.

On cross-examination, he testified that the appellant received some publicity which was not extensive during the T.S.U. demonstrations, and very little during his peace bond hearing and when he complained of abuse by the police. Fox expressed the opinion that the appellant could get a fair trial in Harris County.

At the conclusion of the voir dire examination, the appellant made his second motion for change of venue on the ground that ten of the prospective jurors had heard or read of the appellant through the news media; and because of the court's denial of his motion for individual examination of said jurors for the reason that an examination regarding their bias against militant black demonstrators would have prejudiced the appellant before the entire panel; and re-submitted his original motion for a change of venue.

■ The voir dire examination of the jury panel revealed that none of them knew the appellant. Ten of the panel had heard of the appellant. One of the ten was excused because of prejudice against the punishment which could be assessed for the offense charged. Ten of the panel indicated that they had heard of appellant's name through the news media. Except for two prospective jurors, none of the others on the list from which the trial jury was selected had heard or read about the case. There was no showing that any member of the jury selected to try the case was from the downtown or Sharpstown areas mentioned by two of the compurgators.

The transcript of the evidence on the guilt or innocence, or punishment stages does not reveal any mention of or reference to black militants, demonstrations, riots, or T.S.U.

The record before this Court shows no abuse of discretion by the trial court in refusing to grant appellant's motions for a change of venue.

The appellant urges error on the ground the court's refusal of his motion for individual voir dire examination of the prospective jurors deprived the appellant of a fair trial by an impartial jury; that the denial of his motion at the conclusion of the state's voir dire of the panel to examine six prospective jurors who had stated on examination by the state that they had heard of the appellant so that their possible bias and prejudice against appellant because of his Black Power activities would not prejudice his rights before all the panel; that the denial of his motion at the close of the voir dire to quash the jury panel after ten of the thirty-two prospective jurors had stated that they had read or heard of the appellant through the news media for the reason that it deprived him of a fair trial by an impartial jury; and the denial of his motion for additional challenges deprived him of a fair and impartial trial.

Art. 35.17(1), Vernon's Ann.C.C.P., provides that:

"When the court in its discretion so directs, in a misdemeanor or non-capital felony case, or in a capital case in which the state's attorney has made known that he will not seek the death penalty, the state and defendant shall conduct the voir dire examination of prospective jurors in the presence of the entire panel."

The offense is a non-capital felony.

■ The court did not limit or restrict in time or manner the voir dire examination of the prospective jurors in the presence of the entire panel. Appellant's voir dire examination of the jury panel was in general, that is, he did not make an individual and separate examination of each member of the panel. No opinion was expressed on the guilt or innocence of the appellant in this case by any juror on the list from which the trial jury was selected. No specific questions were refused. The trial court did not abuse its discretion in directing that the voir dire examination be conducted in the presence of the entire panel; and there was no error in refusing the motion to quash the jury panel or grant additional challenges. 35 Tex.Jur.2d 149, Sec. 98; Garza v. State, 130 Tex.Cr.R. 401, 94 S.W.2d 439. Grounds of error numbers two, three, four, and six are overruled.

■ Error is urged on the ground that the verdict of the jury is fatally defective and the findings conflicting in that a con-

viction for the sale of marihuana cannot stand if appellant is acquitted of the offense of possession of the same marihuana.

The court submitted to the jury both the first count of possession and the second count of selling marihuana.

The verdict recites: "We, the jury, find the defendant guilty as charged in the indictment, in the second count thereof."

No motion was made requesting election between the two counts. No objections were made to the submission of both counts to the jury.

The record reveals that the appellant had marihuana in his possession at the time and place in question. The evidence sufficiently shows that the appellant gave and delivered marihuana to B. M. Williams. Grounds of error numbers seven and eight are overruled.

■ The ninth ground of error contends there was improper jury argument by the state as to the search of the house from which the marihuana was allegedly obtained and a check of the inhabitants of said house. In the absence of any objection to the argument, no error is presented for review.

■ It is contended that the restriction of appellant's cross-examination of Houston's Police Chief Short, on the motion for new trial was error. The question was: "Chief Short, did you, in reference to the Texas Southern University riots ask the

Houston Bar Association to file a motion for change of venue in that case?" The state's objection that the question was "Immaterial," was properly sustained. The tenth ground of error is overruled.

■ The eleventh ground of error is that the court's admission of the testimony of the state's witness Tutt, a news reporter for the Houston Chronicle, that appellant could receive a fair trial in Harris County for the reason that no proper predicate had been laid for the same and that his motion to strike such testimony should have been sustained. This matter arose on the hearing on the motion for change of venue. In light of all the testimony of the witness and the presumption that the court disregarded any inadmissible testimony, no error appears.

■ The grounds of error numbers twelve and thirteen attack the constitutionality of Art. 725b, V.A.P.C., for the reason that the punishment authorized[2] is cruelly excessive in relationship to the offense and fails to satisfy the equal protection standards required in statutory classification. These grounds are overruled. Arredondo v. State, 168 Tex.Cr.R. 110, 324 S.W.2d 217; Martinez v. State, Tex.Cr.App., 373 S.W.2d 246, cert. denied, 377 U.S. 937, 84 S.Ct. 1345, 12 L.Ed.2d 301; Segura v. State, Tex.Cr.App., 427 S.W.2d 864; Locke v. State, 168 Tex.Cr.R. 507, 329 S.W.2d 873; Reyna v. State, Tex.Cr.App., 434 S.W. 2d 362.

2. The penalty provision of Art. 725b, V.A. P.C., which defines marihuana as a narcotic drug, reads: "(1) Any person who sells or offers to sell any narcotic drug as prohibited by this Act shall upon conviction be punished by confinement in the penitentiary for not less than five (5) years nor more than life, and upon the second or any subsequent conviction thereof shall be punished by confinement in the penitentiary for life or for any term of years not less than ten (10); any person violating any other provision of this Act shall, upon conviction, be punished by confinement in the state

penitentiary for not less than two (2) years nor more than life, and upon the second or any subsequent conviction therefor shall be punished by confinement in the penitentiary for life or for any term of years not less than ten (10), and the benefits of the suspended sentence law shall not be available to a defendant convicted for a violation of any of the provisions of this Act; provided that any person convicted of a first offense violation of this Act shall be entitled to the benefits of probation under the Adult Probation and Parole Law, as provided therein."

The punishment assessed by the jury in this case is one authorized by the Legislature. This Court has no authority to reduce or change it.

The judgment is affirmed.