Raymond Edward COFFEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–86–00918–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 17, 1987.

Ken J. McLean, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Cathleen C. Herasimchuk, Chuck Rosenthal, Harris County Asst. Dist. Attys., Houston, for appellee.

Before WARREN, COHEN and DUNN, JJ.

## OPINION

WARREN, Justice.

A jury found appellant guilty of the felony offense of injury to a child, and assessed punishment at 50 years confinement and a $10,000 fine.

The evidence shows that Christopher Kalmbach, the 2½ year old son of Patty Kalmbach, died on May 7, 1986, from suffocation caused by his lungs being filled with black pepper.

The appellant lived with Patty Kalmbach and Christopher in a trailer house and frequently punished Christopher by forcing him to ingest black pepper, and by spanking him with a homemade paddle.

On May 7, 1986, at about 8:30 p.m., appellant carried the body of Christopher into a Houston hospital. Dr. Pin Lamb testified that when Christopher arrived in the emergency room, he was not breathing; his mouth, trachea, and lungs were filled with black pepper. The child's entire body was covered with bruises, and he had a large burn wound on one arm. Attempts to intubate the child failed, and he died of aerial obstruction caused by the clots and clumps of pepper in his throat and lungs. Four witnesses testified that the child could not have ingested the pepper by himself.

Appellant had lived with Christopher's mother, Patty Kalmbach, for 3–4 months. He told a nurse at the hospital that Christopher must have gotten the pepper shaker from the kitchen, and that he (appellant) had found the child lying on the bedroom floor. He also told her that the bruises had been caused by rough play with neighborhood kids.

Nurse Fuqua testified that as soon as she told appellant that Christopher was dead, he ran out of the hospital with Patty Kalmbach following, screaming at him.

Sergeant Osterberg arrived at the hospital at 9:25 p.m. to investigate the death. He testified outside the presence of the jury that Patty Kalmbach told him that appellant was responsible for her child's death. She told him that she was in the kitchen while appellant was in the bedroom with Christopher, and she heard appellant tell Christopher to open his mouth. When she went to the bedroom, Christopher was unconscious. Sergeant Osterberg ordered a warrantless arrest of appellant between 10:15 and 10:45 p.m. He testified that he authorized the arrest based upon Ms. Kalmbach's statements, and upon the fact that someone told him that appellant had left the hospital.

Ms. Kalmbach signed a voluntary consent to search her trailer. A pepper shaker without a lid was found on the toilet tank with a few grains of pepper remaining in it. The pepper lid was found on the kitchen

**238**

counter. A pallet was found on the floor of the bedroom. Lying next to the pallet was a homemade wooden paddle, the size and shape of which matched some of the bruises on Christopher's body.

Appellant was arrested at 11:00 p.m. when he reappeared at the trailer park. He was taken to Houston police headquarters. At 1:15 a.m., appellant gave a statement to Officer Waltmon. In his statement, he admitted the following: he whipped Christopher so that Christopher would listen to him; on that day, he gave Christopher "a couple of whippings" with the homemade paddle; he told Christopher to "get his damn ass in the bedroom," and Christopher repeated the word "ass"; he sent Christopher to his room and then got the pepper shaker and set it on the bedroom floor; he returned a few minutes later and found Christopher "half passed out" on the floor, and he called for Patty; the reason he got the pepper shaker was because Christopher said "ass"; and he put pepper in the child's mouth every time the child cursed.

Patty Kalmbach refused to testify at trial. Another witness, Shirley Arnoot, testified that she saw appellant put pepper on the child's tongue on one previous occasion.

In 11 points of error, appellant claims: (1) that the court erred in allowing the State to proffer Patty Kalmbach, a separately tried co-defendant, to testify, knowing that she intended to invoke her fifth amendment privilege against self incrimination; (2) that the trial court, over appellant's objection, allowed the prosecutor to make impermissible jury arguments; (3) that the court erroneously admitted appellant's written statement into evidence because the statement was the fruit of an illegal arrest; (4) that the evidence is insufficient to show that appellant poured pepper down the child's throat; and (5) that the court erred in admitting photographs showing the child's physical condition at the time of his death.

Appellant's first three points of error allege that the trial court erred in allowing the State to call Patty Ann Kalmbach, a co-defendant, to the stand three times, knowing that she intended to invoke the fifth amendment notwithstanding a grant of use immunity. Appellant contends that requiring Patty Kalmbach to refuse to testify three times in the presence of the jury created an improper inference of guilt that was prejudicial to appellant.

Appellant relies heavily on authority holding that it is improper for either side to attempt to influence the jury by calling a witness who it knows will invoke the fifth amendment. *Mathis v. State*, 469 S.W.2d 796 (Tex.Crim.App.1971); *Washburn v. State*, 299 S.W.2d 706 (Tex.Crim.App.1957); *United States v. Maloney*, 262 F.2d 535 (2d Cir.1959). However, it is a critical distinction that all of those cases involved a witness who actually invoked a *valid* fifth amendment privilege.

In this case, Patty Kalmbach had no valid fifth amendment privilege against self-incrimination. The trial judge granted her testimonial immunity. A grant of testimonial immunity substitutes for the fifth amendment privilege. *Ullman v. United States*, 350 U.S. 422, 437, 76 S.Ct. 497, 506, 100 L.Ed. 511 (1956). If granted, immunity displaces the dangers of self-incrimination and eliminates the fifth amendment as a ground for refusing to testify. *In re Grand Jury Proceedings*, 643 F.2d 226, 228 (5th Cir.1981).

The only case appellant cites that involved a witness with no valid fifth amendment privilege is *Vargas v. State*, 442 S.W.2d 686, 687 (Tex.Crim.App.1969). The *Vargas* court held that it was error to call a convicted co-indictee to the stand knowing that he would invoke his privilege against self-incrimination. The court did not address the fact that the witness had no valid fifth amendment privilege to invoke.

However, in *Franco v. State*, 491 S.W.2d 890 (Tex.Crim.App.1973), the defense wanted to call a witness who had previously pleaded guilty to an offense arising out of the same incident about which she was called to testify. The trial court permitted

the witness to invoke the fifth amendment, and she was dismissed. The Court of Criminal Appeals held that because the witness had already pleaded guilty to the offense, she had no privilege to claim; therefore, the trial court was in error in permitting her to claim the fifth amendment.

In *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), the Fifth Circuit made it clear that a witness who waives his fifth amendment privilege is not entitled to the same protection as a witness with a valid fifth amendment privilege. In *Beechum*, the defendant testified at trial, and so waived his privilege. Nevertheless, the trial court allowed him to invoke the fifth amendment in response to Government questioning. Beechum then complained on appeal that he was prejudiced by having to assert the amendment repeatedly. The court responded:

> Any prejudice deriving from the invocation of the privilege is therefore attributable to Beechum's decision to testify. Indeed, Beechum can hardly complain; if the court had ruled correctly and not allowed him to invoke the fifth amendment he could have refused to respond only on peril of contempt. *Moreover, in that instance the Government would have been entitled to comment on Beechum's refusal to answer, notwithstanding the prohibition on such comment where the privilege is properly invoked.*

582 F.2d 909. (emphasis added) (citations omitted).

In the case at bar, Patty Kalmbach no longer had a fifth amendment privilege after she was granted immunity. The trial judge informed her of this and held her in contempt when she refused to testify. It was not error for the trial court to permit the State on three occasions to call her to the stand.

Points of error 1, 2, and 3 are overruled.

Appellant's fourth point of error asserts that the trial court erred in overruling his objection to the prosecutor's closing argument regarding appellant's demeanor.

An objection raised on appeal will not be considered if it varies from the objection made at trial. *Euziere v. State*, 648 S.W.2d 700, 703 (Tex.Crim.App.1983). Appellant's objection at trial was that the argument was a comment on appellant's failure to testify. His ground of error on appeal is that the argument went outside of the record. The Court of Criminal Appeals found this same mismatching of objections to be insufficient to preserve error in *Bouchillon v. State*, 540 S.W.2d 319, 322 (Tex.Crim.App.1976). Appellant has failed to preserve error for review.

Appellant's fourth point of error is overruled.

Appellant's fifth point of error complains of the prosecutor's argument during the punishment phase of the trial that the appellant produced no reputation witnesses.

Appellant objected at trial that the argument was a comment on the appellant's failure to testify. He complains on appeal that the argument was a comment on the appellant's failure to produce witnesses. The objection does not comport with the complaint on appeal; therefore, any error is waived. *Euziere v. State*, 648 S.W.2d at 703.

Appellant's fifth point of error is overruled.

In his sixth point of error appellant complains of the following argument made by the prosecutor during the punishment phase of the trial:

> But you think about what Mr. Hill has asked you what real proof have we brought you that this man has never been convicted of any felony or given felony probation before. We don't even know his real name.

Appellant asserts that this was a comment on appellant's failure to testify.

In order to violate Tex.Code Crim.P.Ann. art. 38.08 (Vernon 1979) and Tex.Const. art. I, § 10, the argument, when viewed from the jury's standpoint, must be manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to

testify. *Banks v. State*, 643 S.W.2d 129, 134 (Tex.Crim.App.1982). If the remark called the jury's attention to the absence of evidence that only the defendant's testimony could supply, it is necessarily a comment on the defendant's failure to testify. *Id.* However, if the language used can reasonably be construed as referring to the defendant's failure to produce evidence other than his own testimony, it is not improper. *Id.* at 135.

In this case, the defense counsel urged the jury to give appellant probation and stated three times that appellant had never before been convicted of a felony in any state. A police officer testified that he had checked the N.C.I.C. computer, which did not include crime record information for all states, and that he did not find any felony convictions for Raymond Edward Coffey. The State's hearsay objection was overruled.

In this context, the prosecutor's argument could reasonably have been construed as referring to the defendant's failure to produce evidence of his eligibility for probation other than a computer system that does not include all 50 states and is dependent upon appellant's true name being entered into it. This is not evidence that only appellant's testimony could provide.

The prosecutor's remarks did not naturally and necessarily refer to appellant's failure to testify. Further, the remark was in answer to appellant's argument. Appellant's sixth point of error is overruled.

Appellant's seventh and eighth points of error allege that the prosecutor's argument at the penalty phase constituted an improper statement of the law.

■ The prosecutor argued to the jury, "Unfortunately, the appropriate punishment in this case is not in the charge." He later reiterated the argument, saying, "As I said before, the appropriate punishment is not in this charge, but I would ask you to give [appellant] the maximum." Appellant's objections to the prosecutor's argument were overruled.

Appellant contends that these statements amounted to an erroneous instruction to the jury that the death penalty was the only appropriate punishment.

Although the prosecutor's remarks were improper, his allusions to a punishment not contained in the charge could not have misled the jury into a mistaken belief that they could assess a punishment not authorized by the law, nor did it urge the jury to disregard the law.

■ Improper jury argument is not reversible error unless, in light of the record as a whole, the argument is extreme, manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Mathews v. State*, 635 S.W.2d 532, 539 (Tex.Crim. App.1982).

The argument did not constitute reversible error.

Appellant's seventh and eighth points of error are overruled.

■ Appellant's ninth point of error complains that the trial court erred in admitting into evidence appellant's written confession, which appellant contends was the fruit of an illegal arrest. In his written statement, appellant denied putting the pepper down the child's throat, but admitted that he put a little pepper in his mouth every time the child cursed. He also admitted that after he sent Christopher to his room on the night of his death, he got the pepper shaker from the kitchen.

After a hearing on appellant's motion to suppress, the trial court ruled that the statement was admissible.

Appellant contends that the warrantless arrest was unauthorized by Tex.Code Crim. P.Ann. art. 14.04 (Vernon 1977).

Article 14.04 states:

Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

The Court of Criminal Appeals recently addressed the requirements of art. 14.04 in

*Dejarnette v. State*, 732 S.W.2d 346 (Tex. Crim.App.1987). The court held that the statute requires a showing that the arresting officer(s) had satisfactory proof that: 1) a felony had been committed; 2) the person arrested was the offender; and 3) the offender was about to escape. Appellant complains that the police had no satisfactory proof that he was about to escape when they arrested him without a warrant.

The *Dejarnette* court formulated a general rule regarding the imminent escape requirement: "There must be some evidence amounting to satisfactory proof, either related by a credible person to an officer or observed by the officer him/herself indicating that the defendant was about to escape so that there was no time to procure a warrant." 732 S.W.2d at 351.

The information available to the officers at the time the evidence concerning escape is related to them controls the officers' actions, not necessarily evidence discovered when the defendant is later apprehended. 732 S.W.2d at 351.

The burden is on the State to show that the arrest was within an exception to the warrant requirement. *Beasley v. State,* 728 S.W.2d 353, 355 (Tex.Crim.App.1987). Exceptions to the warrant requirement are strictly construed. *Dejarnette v. State,* 732 S.W.2d at 349.

We are of the opinion that at the time Sergeant Osterberg authorized the arrest (between 10:15 and 10:45 p.m.) and at the time of the arrest (11:00 p.m.), the sergeant had satisfactory proof related by credible persons or observed by him indicating that appellant was about to escape.

Before he authorized the warrantless arrest, Osterberg was told by the mother that appellant had caused Christopher's death, and was further told that appellant ran from the hospital after learning that Christopher was dead. The officer could conclude that appellant and Patty Kalmbach's relations would be severed as a result of the heinous crime, and appellant knew that the mother's wrath would be directed toward him.

At the time of the arrest, about two hours after Christopher's death, the officers, by reason of the trailer's search, had uncovered more evidence connecting appellant with the crime, as well as additional evidence of appellant's sadism. Unlike some of the cases relied on by appellant, the officer had no information as to appellant's whereabouts. According to the officer's testimony, it would take two to four hours to obtain a search warrant at that time of the night.

In *Dejarnette v. State,* the Court of Criminal Appeals discussed factors that are to be considered in evaluating proof of imminent escape. Included in these factors are: the temporal proximity of a suspect's actions to the crime; the suspect's discovery of police pursuit; and the geographic location of arrest. The court emphasized the importance of considering all the factors involved, as well as their special relationship to each other in each case. 732 S.W.2d at 352.

The *Dejarnette* court noted that in many of the cases in which sufficient facts were shown to justify a warrantless arrest under art. 14.04, police were informed that the defendant was about to escape, or the police observed conduct that indicated that the suspect was about to escape. 732 S.W.2d at 350. In many of those cases, the officers' receipt of probable cause to arrest the defendant was simultaneously with or within a very short time of their receipt of information concerning imminent escape.

For example, in *King v. State,* 631 S.W.2d 486 (Tex.Crim.App.1982), within 10 minutes of the officers' receipt of probable cause to arrest King, he was seen leaving the house of an acquaintance and getting into his truck. The acquaintance had been stopped by police earlier in the day while driving King's truck, and had given King's name and address to the police. Therefore, the police had a reasonable belief that the acquaintance had informed King of the police investigation, and that King would attempt to escape.

In *West v. State,* 720 S.W.2d 511 (Tex. Crim.App.1986), police were told that a man fitting the eyewitness' description lived in a

242

room of the apartment complex in which a murder had just been committed. Officers knocked on the door to investigate further and were greeted by West's companion. West was visible inside the room; the police asked him to step into the hall. West fit the description given by the witnesses, and was arrested. The court held:

> [W]hen, as in the instant case, officers who reasonably believe that further investigation of an offense may be necessary in order to justify the issuance of a warrant; and where those officers undertake that investigation lawfully and without impinging upon reasonable expectations of privacy, and where that investigation leads to the receipt of information which in combination with their other information constitutes probable cause to arrest the suspect, but that information is obtained in the presence of the suspect under circumstances which would lead the officers reasonably to believe that the suspect would take flight if given the opportunity to do so, the officers are authorized by Art. 14 to arrest the suspect without first procuring a warrant. 720 S.W.2d at 518.

In *Dejarnette v. State*, a witness to a murder gave officers a description of the perpetrators. Shortly thereafter, officers observed Dejarnette walking on a public street two blocks from the crime scene, and arrested him.

The court concluded that the warrantless arrest was valid. In addressing the imminent escape requirement, the court noted that the defendant was found on a public street, near but away from the crime scene, very shortly after the murder. His confrontation with the police alerted him of their pursuit. The court found that those facts provided satisfactory proof that the defendant was about to escape so that the procurement of a warrant was impractical.

In our opinion, the circumstances in our case compelled a warrantless arrest, even more so than those present in *Dejarnette*, *King*, or *West*.

In *Self v. State*, 709 S.W.2d 662 (Tex.Crim.App.1986), *Bell v. State*, 724 S.W.2d 780 (Tex.Crim.App.1986), and *Sklar v. State*, No. 041–86 (Tex.Crim.App., July 1, 1987) (not yet reported), cases for which the Court of Criminal Appeals found the warrantless arrests to be invalid under art. 14.04, the peace officers had information about when and where the defendant could be found, circumstances not present in our case.

We hold that there was probable cause for an arrest and that under the circumstances, a warrantless arrest was authorized. Appellant's ninth point of error is overruled.

Appellant's tenth point of error complains that there was insufficient evidence to prove that it was he who poured the pepper down the child's throat.

The test for reviewing the sufficiency of the evidence to support a conviction is whether the record could reasonably support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). The standard of review is the same for both direct and circumstantial evidence. *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim.App.1983) (op. on reh'g). However, if a conviction is based on circumstantial evidence, we must determine whether there is a *reasonable alternative explanation* of the circumstances that a rational trier of fact would have to accept as raising a reasonable doubt of the accused's guilt. *Whaley v. State*, 660 S.W.2d 894, 898 (Tex.App.—Fort Worth 1983, pet. ref'd) (emphasis in original). Any alternative explanation must be reasonable, consistent with the facts proved, and not out of harmony with the evidence. *Id.*

Appellant admitted in his statement that after he sent Christopher to his room for saying "ass," he went to get the pepper shaker. He further admitted that he put pepper on Christopher's tongue every time the child cursed. This testimony was supported by Shirley Arnoot, a close friend of appellant, who testified that she had seen appellant put pepper on the child's tongue in the past.

The appellant argues that a reasonable alternative explanation exists that it was

Patty Kalmbach who put the pepper down the child's throat. However, that explanation is inconsistent with both the facts proved and the evidence produced at trial. There was no evidence that Ms. Kalmbach had ever put pepper in the child's mouth on any other occasion. Appellant said in his statement that after he found the child choking he "called for Patty." Therefore, the jury could infer that she was not with the child during the incident. Furthermore, Nurse Fuqua testified that appellant ran out of the hospital when he learned that Christopher was dead, and that Patty Kalmbach ran after him, screaming at him.

The evidence was sufficient to sustain the conviction.

Appellant's tenth point of error is overruled.

█ Appellant's final point of error complains that the trial court erred in admitting evidence of the condition of Christopher's body at the time of his death. Appellant argues that photographs and testimony concerning bruises and cigarette burns on the child constituted inadmissible evidence of an extraneous offense. The State contends that the evidence was properly admitted as "res gestae" of the offense.

Appellant complains of the admission of State's exhibits 1–13, which are photographs of Christopher's body at the time of his death. The photographs revealed defensive wounds and massive bruises that covered much of the child's body, including a fresh bruise matching the homemade paddle that appellant admitted having used on the child the night of his death.

It is well settled that evidence of prior criminal conduct that is collateral to the charge on which the defendant is being tried is inadmissible. *Maynard v. State*, 685 S.W.2d 60, 66 (Tex.Crim.App.1985).

█ However, when one offense or transaction is one continuous episode, or another offense or transaction is a part of the case on trial, or blended or closely interwoven therewith, proof of all the facts is proper. *Mitchell v. State*, 650 S.W.2d 801 (Tex.Crim.App.1983). In *Maddox v.*

*State*, 682 S.W.2d 563 (Tex.Crim.App.1985), Judge Clinton said, "[w]hen evidence is offered under this 'context of offense' rationale, the prejudicial nature of it will rarely render it inadmissible *so long as* it truly sets the stage for the jury's comprehension of the whole criminal transaction." (concurring) (emphasis in original)

In the instant case, it is not challenged that the State's exhibits 1–13 are fair and accurate depictions of the child at the time of his death. There was testimony at trial that Christopher had defensive wounds on his hands, had fresh lacerations on his body, and had a fresh bruise that matched the homemade paddle. This evidence was clearly admissible to show the context of the child's death. The evidence of all of the abusive acts committed against the child was inextricably intertwined with the final act of pouring the pepper down the child's throat, and was admissible to show the context of the child's death.

Appellant's eleventh point of error is overruled.

Affirmed.