**Gilberto Aquilar NUNFIO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–88–01172.**

Court of Appeals of Texas, Houston (1st Dist.).

March 15, 1990.

**144**

Robert A. Rodriguez, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., John M. Bradley, Mike Anderson, Rob Kepple, Harris County Asst. Dist. Attys., for appellee.

Before EVANS, C.J., and COHEN and HUGHES, JJ.

## OPINION

HUGHES, Justice.

A jury convicted appellant of aggravated sexual assault, and sentenced him to 65 years imprisonment.

The complainant, a nun, testified that she was asleep in her room when a noise awoke her. She saw a man with a knife standing in her room. The man proceeded to beat her, and then raped her several times. When the man fell asleep, the complainant escaped and called the police, who found appellant sleeping in the complainant's bed.

In his first point of error, appellant contends the trial court erred in preventing appellant's counsel from conducting voir dire regarding the complaining witness' occupation. Prior to voir dire, the trial court granted the State's motion in limine regarding the fact the complainant is a nun, and denied appellant's request to use a hypothetical fact situation involving a nun.

Appellant contends that, pursuant to TEX. R.APP.P. 52, he properly preserved error because there was an objection by the State and a ruling by the trial court. Rule 52 provides that in order for the appellate court to review excluded evidence, the record must reflect an offer of the evidence, the objection made, and the ruling by the court. When this procedure is followed, no further offer need be made.

Appellant has not properly preserved this point of error for review. The Court of Criminal Appeals has ruled that the grant or denial of a motion in limine is not sufficient to preserve error. *Romo v. State,* 577 S.W.2d 251, 252 (Tex.Crim.App. 1979); *see also Rushton v. State,* 695 S.W.2d 591, 593 (Tex.App.—Corpus Christi 1985, no pet.). Because a judge is often not in a position to decide on the admissibility of evidence prior to the beginning of trial, *Romo,* 577 S.W.2d at 252, the specific activity to which the motion is directed must actually be attempted and either per-

mitted or prohibited by the court, and a proper record thereof made, before there is anything for the appellate court to review. *See Ransom v. State*, 630 S.W.2d 904 (Tex. App.—Amarillo 1982, no pet.), where Ransom stated that her voir dire examination had been improperly restricted by the trial court when it granted a motion in limine presented by the State. The court overruled Ransom's argument because it found no restriction on her voir dire examination in the area that was the subject of the motion. *Ransom*, 630 S.W.2d at 907.

■ In cases in which an appellant challenges the jury voir dire process, as distinguished from appeals concerning the trial judge's failure to grant a specific challenge for cause, there is no requirement that appellant show harm. *Smith v. State*, 513 S.W.2d 823, 926 (Tex.Crim.App.1974). The proper standard of review in such cases is abuse of discretion. The standard focuses on whether a question proffered by counsel and refused by the trial judge was proper. If the disallowed question was proper, harm is presumed because a defendant has been denied the intelligent use of his peremptory strikes. *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Crim.App.1985).

Because the standard of review is abuse of discretion, it is essential that the record present this Court with a question that the trial judge has not allowed to be answered. *Cockrum v. State*, 758 S.W.2d 577, 584 (Tex.Crim.App.1988). The *Cockrum* court further held that

> If counsel refrains, *for whatever reason*, from asking a question, the judge is denied the opportunity to make a ruling. Thus, we are unable to review the correctness of a ruling which was never made. *Jones v. State*, 596 S.W.2d 134, 137 (Tex.Crim.App.1980); *Johnson v. State*, 447 S.W.2d 927, 930 (Tex.Crim. App.1969). For appellant to have a cognizable point of error, the record must reflect a ruling which appellant wishes to challenge. *See* Tex.R.App.P. 52(a).

*Cockrum*, 758 S.W.2d at 584. (Emphasis added.)

■ We have reviewed the entire voir dire examination and can find no instance where appellant attempted to specifically discuss complainant's occupation and was denied the opportunity to do so. Additionally, appellant did ask the venire panel, without objection, if anyone had attended Catholic schools, whether they had been taught by nuns, and whether they could wait to pass judgment on the credibility of a witness until after their testimony is given regardless of the witness' occupation. Because the record does not reflect any refused question concerning complainant's occupation, we cannot review that which does not exist—the trial judge's exercise of discretion. *Cockrum*, 758 S.W.2d at 585. Appellant's first point of error is overruled.

Appellant's second, third and fourth points of error concern improper prosecutorial argument during the punishment phase of the trial. Appellant argues in his second point of error that the trial court erred in allowing the prosecutor to apologize for the range of punishment, asserting the argument was improper, inflammatory, and outside of the record. In his third and fourth points of error, appellant contends the court erred in allowing the prosecutor to argue that the legislature made a mistake in not providing a greater punishment for the offense, and in allowing the prosecutor to present the same argument for a second time.

During the punishment phase of the trial, the State argued:

> MR. ANDERSON (counsel for the State): One of the mistakes made by our legislature is that we're going—
> MR. HERNANDEZ: I'm going to object to the State getting into the rationale of the statutes made by the legislature because it's outside the record.
> THE COURT: Sustained.
> MR. ANDERSON: I apologize to you that there is no provision for punishment greater than life and $10,000 in this case.
> MR. HERNANDEZ: Objection. That's inflammatory and prejudicial and outside the record.
> THE COURT: Overruled.
> MR. ANDERSON: I apologize to you that that's all I can ask you for. I apolo-

gize to Nanette Navarre that that's all I can ask you for. That's a mistake, but that's a mistake we've got to live with today.

MR. HERNANDEZ: I object to mentioning about the mistake again.

THE COURT: Overruled.

Appellant argues that these remarks constitute reversible error because they referred to matters outside of the record, and the purpose of the arguments was to encourage the jury to assess a punishment greater than that provided for by the legislature.

The State suggests that the argument accurately summarized and made reasonable inferences, from the evidence. The general argument of the prosecutor was that appellant committed a heinous crime, and life imprisonment and a fine were not sufficient to punish him.

The areas of permissible jury argument encompass the following four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex.Crim.App. 1987).

In a similar case, the prosecutor argued to the jury that the appropriate punishment in the case was not in the charge, and asked the jury to assess the maximum punishment available. *Coffey v. State*, 744 S.W.2d 235, 240 (Tex.App.—Houston [1st Dist.] 1987, pet. granted). On appeal, appellant argued that the argument amounted to an erroneous instruction to the jury that the death penalty was the only appropriate punishment. This Court held that the argument did not constitute reversible error, reasoning that the prosecutor's allusions to a punishment not in the charge could not have misled the jury into a mistaken belief that they could assess a punishment not authorized by the law, nor did the argument urge the jury to disregard the law. *Id.*

■ The argument made in this case, if erroneous, does not rise to the level of reversible error. *See Coffey*, 744 S.W.2d at

240. The jury could only assess the range of punishment provided by law. Even if improper argument is made, such error is not reversible, unless, viewing the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts, harmful to the accused, into the trial. *Franklin v. State*, 693 S.W.2d 420, 429 (Tex.Crim.App. 1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1238, 89 L.Ed.2d 346 (1986). We do not find that to be the case in this instance. Appellant's second, third and fourth points of error are overruled.

Appellant argues in his fifth point of error that the evidence is insufficient to support his conviction for aggravated sexual assault because the evidence fails to show the knife was used as a deadly weapon.

In reviewing the sufficiency of the evidence, the appellate court must determine, after viewing the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, —— U.S. ——, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988).

A deadly weapon is defined in the Texas Penal Code as follows:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Tex.Penal Code Ann. § 1.07(a)(11) (Vernon 1988).

■ While a knife is not a deadly weapon per se, *Williams v. State*, 575 S.W.2d 30, 32 (Tex.Crim.App.1979), the State can prove a particular knife to be a deadly weapon by showing its size, shape and sharpness, the manner of its use or intended use, and its capacity to produce death or serious bodily injury. *Davidson v. State*, 602 S.W.2d 272, 273 (Tex.Crim.App.1980);

*Denham v. State,* 574 S.W.2d 129, 130 (Tex.Crim.App.1978).

■ Appellant relies on *Blain v. State,* 647 S.W.2d 293, 294 (Tex.Crim.App.1983), to support his contention that the evidence is insufficient to support the conviction. In *Blain,* the defendant was convicted of aggravated robbery based on his display of a knife in the robbery of a convenience store. Even though the victim stated he was afraid he might be stabbed, Blain made no attempt to stab or cut the victim. The knife was not introduced at trial, and there was no testimony to establish the size of the blade, appearance of sharpness, or threatening motions with the knife by Blain. The court held there was insufficient evidence to show that Blain used or exhibited a deadly weapon, noting that the victim's testimony did not establish fear of *serious* bodily injury. *Blain,* 647 S.W.2d at 293–94.

In this case, the record reflects greater evidence than adduced in *Blain* to show that the knives were indeed used as deadly weapons.

The complainant testified that appellant had a knife in his hand when she first awoke and found him in her room. A struggle followed, and appellant repeatedly hit the complainant, pushed her onto the bed, and then threw her on the floor. The complainant testified she was in fear of serious bodily injury. She stated that appellant held a knife in her face when he first entered her room, and that she cut her finger when she wrenched the knife from his hand. At one point, between the rapes and ongoing violence, appellant went to the kitchen and got another knife. The complainant testified that she was frightened by the knives, and she thought that if she did not get the knives away from appellant, he would kill her. Those fears were legitimized by appellant's brutal attack on her.

Sergeant Yarborough, an officer with the Houston Police Department sex crimes division, testified that both knives were capable of causing death or serious bodily injury. Both knives were admitted into evidence, along with photographs of the knives. From the photographs, both knives appear to be kitchen knives with lengthy, narrow blades, pointed tips, and sharp edges. The knives and the photographs were observed by the jury, which was able to see the size of the blades and their sharpness.

We find the evidence sufficient to show appellant used a deadly weapon. Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.

EVANS, C.J., concurs.

COHEN, J., dissents.

EVANS, Chief Justice, concurring.

I agree with the holding of the majority opinion that the judgment of the trial court should be affirmed.

I disagree, however, with the majority's conclusion that appellant did not preserve the error because he failed to ask the prohibited question after the court ruled it could not be asked. In this respect, I agree with the dissent that the court's ruling effectively prevented appellant's counsel from further mentioning the subject before the venire.

It is my further opinion, however, that the court's ruling, if erroneous, could not have resulted in any harm to appellant, because the State never revealed to the jury that the complainant was a nun. The complainant did testify that she was a coordinator for a refugee center and a member of the Roman Catholic Ursuline Order, which she described as a "congregation of religious women." She did not, however, wear a nun's clothing during trial, and there was no other evidence showing she was a member of the clergy. Thus, whether appellant's proposed question was a proper inquiry became a moot issue. I find no conflict between the majority holding and the holdings in *Florio v. State,* 568 S.W.2d 132, 133 (Tex.Crim.App.1978), and *Trevino v. State,* 572 S.W.2d 336, 337 (Tex. Crim.App.1978), which, as the dissent points out, state the general rule that a court's denial of a proper voir dire question cannot be considered harmless error.

Here, because the State did not offer proof that the complainant was a nun, I do not believe the decisions in *Florio* and *Trevino* are applicable.

COHEN, Justice, dissenting.

I believe the trial court erred by barring defense counsel from asking the venire if they could be fair to a defendant accused of sexually assaulting a nun. In addition, I believe the error was preserved for review. Finally, Texas courts have held that such an error cannot be harmless.

Immediately before voir dire began, the following occurred:

> The Prosecutor: ... We would also have a motion in limine, of course, about the— we would reurge the motion in limine about any facts of the case ... The fact that may come out in evidence the complainant is, indeed, a nun.
>
> The Court: I am going to ... grant the motion with regards to the facts as to the occupation or vocation of complainant.
>
> Defense Counsel: Can I use a hypothetical fact situation, if the victim is a nun, could they be fair and impartial?
>
> The Court: No.

I do not agree that the error was waived because counsel did not disregard the court's order and ask the prohibited question. Jury selection took place immediately after the court had clearly told defense counsel not to ask that question. Justice Hughes' opinion would require lawyers to violate the trial court's ruling in order to obtain appellate court review. Attorneys should not have to do that in order to preserve error. Chief Justice Burger said it right. In a case involving a Houston attorney held in contempt for violating a trial judge's order during trial, he wrote:

> We begin with the basic proposition that *all orders and judgments of courts must be complied with promptly.* If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. *Persons who* make private determinations of the law and *re-fuse to obey an order generally risk criminal contempt* even if the order is ultimately ruled incorrect (citations omitted) *The orderly and expeditious administration of justice* by the courts *requires that "an order issued by a court* with jurisdiction over the subject matter and person *must be obeyed* by the parties until it is reversed by orderly and proper proceedings." (citations omitted) *This principle is especially applicable to orders issued during trial.* (citation omitted) *Such orders must be complied with promptly and completely* for the alternative would be to frustrate and disrupt the progress of the trial with issues collateral to the central questions in litigation.... But, *once the court has ruled, counsel* and others involved in the action *must abide by the ruling and comply with the court's orders.*

*Maness v. Meyers,* 419 U.S. 449, 458–59, 95 S.Ct. 584, 591, 42 L.Ed.2d 574. (Emphasis added.) *Accord Scruggs v. State,* 782 S.W.2d 499 (Tex.App.—Houston [1st Dist.], 1989, pet. ref'd).

A trial judge's orders should be obeyed, not disobeyed. We should not require lawyers to disobey them in order to render effective assistance of counsel. Indeed, such a holding is unnecessary here because the judge did not grant relief in limine, that is, that the parties approach the bench for a ruling before mentioning the disputed subject before the jury; he made a direct order suppressing mention of the subject before the venire. The judge did not say, in effect, "Approach the bench when you want to ask that question, and I will rule then." Rather, he specifically told counsel not to ask the question. In my opinion, this was a ruling on the merits that excluded the subject from mention before the venire. It was not in the nature of a motion in limine because it granted the State all the relief requested.

I believe the cases on waiver are either distinguishable or were wrongly decided. The first two, *Romo v. State,* 577 S.W.2d 251, 252 (Tex.Crim.App.1979), and *Rushton v. State,* 695 S.W.2d 591, 593 (Tex.App.—

Corpus Christi, 1985, no pet.), are distinguishable. Both held that a motion in limine will not preserve error *in the admission of evidence offered at trial.* "The reason for this rule is that a judge is often not in a position to decide the admissibility of evidence prior to the beginning of trial." *Romo v. State,* 577 S.W.2d at 252. This case, however, does not involve the admission of evidence at trial. Whether evidence is admissible at trial depends on the record as a whole. Events often occur during trial that change a trial judge's mind and make evidence admissible that seemed inadmissible before trial. Here, the voir dire began immediately after the judge's ruling. There were no intermittent circumstances, and the issue was ripe for decision. Thus, the reason behind the rule that a motion in limine preserves no error in the admission of evidence is not relevant here.

The only case cited in Justice Hughes' opinion applying the waiver rule to the jury selection process is *Ransom v. State,* 630 S.W.2d 904, 907 (Tex.App.—Amarillo 1982, no pet.). *Ransom* cites no authority for its holding except *Romo,* which involved the presentation of evidence, not the selection of a jury. In my opinion, *Ransom* was wrongly decided because it treats the voir dire process the same as the trial process, without discussing the important differences.

I would hold that the judge's ruling was not a ruling in limine, but was a ruling in the nature of a suppression order, and that the complaint was preserved under these circumstances.

The next question is whether the judge erred. I believe he did. In *Hernandez v. State,* 508 S.W.2d 853 (Tex.Crim.App.1974), the court reversed because the defendant was not permitted to ask if the venire could believe that a police officer might lie under oath. Judge Odom, concurring with Judge Morrison, wrote:

> ... The defense should be permitted to ascertain whether prospective jurors would give unwavering credibility to any witness *because of membership in a class, such as* peace officers or *minister,*

regardless of what the evidence may show, ...

508 S.W.2d at 854. (Emphasis added.) *Accord Florio v. State,* 568 S.W.2d 132 (Tex.Crim.App.1978).

In *Abron v. State,* 523 S.W.2d 405 (Tex.Crim.App.1975), the court reversed a rape conviction because the trial judge would not allow the defendant to ask the venire if it would make a difference that the black defendant was accused of raping a white victim. The court reversed even though the defense attorney was allowed to ask general questions regarding racial prejudice. The court wrote:

> Counsel in the instant case was permitted to ask general questions regarding race prejudice, but the court did not allow him to ask more *specific questions presenting the matter of prejudice upon the very issue involved in the case.* Answers to the more specific questions regarding racial prejudice would have been valuable to appellant because they could have furnished the basis for the intelligent exercise of peremptory challenges. Deprivation of this valuable right is a showing of injury sufficient to necessitate reversal.

523 S.W.2d at 409. (Emphasis added.)

The State relies on the court of appeals opinion in *Brown v. State,* 674 S.W.2d 443 (Tex.App.—Dallas 1984), *affirmed on other grounds,* 741 S.W.2d 453 (Tex.Crim.App. 1987), which upheld the trial court's refusal to allow a manslaughter defendant to ask if venire members would be biased because the victim was a police officer. The opinion sought to distinguish *Abron* on the basis that racial prejudice was a "suspect class" in federal constitutional law, but there was no constitutional protection for police killers. 674 S.W.2d at 446.

I would not follow the court of appeals opinion in *Brown* for three reasons. First, *Abron* was not decided on the basis of federal constitutional law, but on the basis of Texas law. The *Abron* court observed that even if United States Supreme Court decisions were complied with, "There remains the issue of whether our constitutional and statutory standards were met."

**150**

523 S.W.2d at 408. Second, *Brown* did not mention, much less attempt to distinguish, contrary authorities from a higher court, such as *Florio* and *Hernandez*, which allowed inquiry about prejudice in favor of police witnesses. Third, *Brown* repeatedly emphasized that the trial court allowed questions concerning bias in favor of police officers. 674 S.W.2d at 447. The trial court here made no such ruling. *Brown*, of course, is not binding authority because the court of appeals judgment was affirmed on grounds unrelated to the issue here.

*Florio* and *Hernandez* have established that a defendant may ask if the venire would favor police witnesses. Two judges in *Hernandez* would allow inquiry about the venire's bias in favor of a minister. *Abron* established that a defendant may ask if the venire would favor the State because of the race of the victim in the very case on trial. If defendants can ask about a witness' occupation and about a victim's race, how can they be prohibited from asking about a victim's occupation? I doubt there is one rule for witnesses and another for victims, or one rule for ministers and another for nuns. Thus, I would hold that the trial judge committed error.

The final issue is whether the error was harmless. *Florio* holds: "[D]enial of a proper question cannot be harmless error...." 568 S.W.2d at 133. *Accord Trevino v. State*, 572 S.W.2d 336, 337 (Tex. Crim.App.1978).

The present case might be an appropriate one for the application of harmless error rule, Tex.R.App.P. 81(b)(2), except for the holding in *Florio* that denial of a proper question cannot be harmless error. The evidence of appellant's guilt was overwhelming, and it is difficult to believe that any properly selected jury would have reached a different result. Harm is more difficult to assess at the punishment stage, where the jury assessed 65 years. Appellant was eligible for, applied for, and argued for probation before the jury. Thus, I believe that under the harmless error rule, the most he would be entitled to would be a new punishment hearing. *See*

Tex.Code Crim.P.Ann. art. 44.29(b) (Vernon Supp.1989). Indeed, the State argues there was no harm at either stage of the trial because testimony never revealed the victim was a nun. The victim did not wear a nun's clothing during trial, but she testified she was a coordinator for a refugee center and a member of the Roman Catholic Ursuline Order, "a congregation of religious women." Appellant's counsel asked one witness, a police officer, if the victim was a nun, but he testified he did not know. However, we need not decide whether this told the jury the victim's status because under *Florio*, a harmless error holding is not an option.

I would hold that the issue is preserved for review; that the court erred; and that *Florio* makes the error reversible per se without consideration of harm. Consequently, I would sustain the first point of error, reverse the judgment, and remand the cause for a new trial.

I respectfully dissent.