Opinion issued October 27, 2011

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00784-CR

NO. 01-10-00785-CR

———————————

Brandon Lenard Miles, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 230th District Court

Harris County, Texas



Trial Court Case Nos. 1247284 & 1264436

 



 

MEMORANDUM OPINION

          A
jury convicted appellant, Brandon Lenard Miles, of the first degree felony
offenses of aggravated assault on a public servant and aggravated robbery and assessed
punishment at twelve years’ confinement for both offenses, to run concurrently.[1]  In two issues, appellant contends that the
trial court erred in (1) overruling his objection to the prosecutor’s
argument referencing appellant’s appearance during the guilt-innocence phase of
trial and (2) overruling his objection that this argument was outside of
the record and injected new and harmful facts into the proceeding.

          We
modify the judgments of the trial court and affirm as modified.

Background

          On
August 26, 2009, Houston Police Department (“HPD”) Officer P. Marquez was
working an off-duty job as a security officer at Amegy Bank in Northeast
Houston.  Shortly before the lobby of the
bank closed, two men entered the bank and walked directly to the teller stations.  Officer Marquez noticed the men because both
were wearing long-sleeved shirts or jackets in late August.  One of the men, later identified as Anthony
Onibokun, wore a white towel around his neck. 
The other man, later identified as appellant, wore a white hat.  At trial, Officer Marquez identified
appellant as the man wearing the white hat during the robbery.

          As
the men stood at the teller stations, Officer Marquez saw one of the men pull
something from his waistband, and Marquez recognized the grip of a
handgun.  Officer Marquez testified that
he identified himself as a police officer and told the men to drop their
weapons.  The men turned around to face
Officer Marquez, and appellant pointed a gun at Marquez, who had also drawn his
weapon.  Marquez, Onibokun, and appellant
exchanged gunfire, and Onibokun and appellant then fled the bank.  No one was injured during this incident.

          HPD
Sergeant C. Howard showed Officer Marquez a photo-array several months after
the robbery.  Officer Marquez gave a
“100% positive” identification of appellant. 
Officer Marquez testified that the picture of appellant in the
photo-array—in which appellant wore his
hair in braids and had no facial hair—looked like appellant did at the time of the robbery.  Officer Marquez further testified that
appellant did not look the same at trial as he did in the photo-array.  Specifically, appellant’s hairstyle was
different, he had a goatee, and he looked a little bit heavier at trial.  The trial court admitted into evidence the
photo-array, still photographs from the bank’s surveillance video, and the
surveillance video itself.

          FBI
Bank Robbery Task Force Officer J. Michael testified that he created the
photo-array that contained appellant’s picture. 
Officer Michael stated that he had difficulty creating the photo-array
because appellant had an “unusual hairstyle”—he wore his hair braided or in dreadlocks.  Officer Michael showed the photo-array to Rosita
Flores and Rosa Crespin, two of the tellers at Amegy Bank, and both women
positively identified appellant as the man wearing the white hat during the
robbery.  On cross-examination, defense
counsel showed Officer Michael a still photograph from the surveillance video,
and Officer Michael agreed that the man wearing the white hat had “protruding”
and “prominent” ears.

          Harris
County Sheriff’s Department Deputy Persand, who arrested appellant, testified
that, at the time of his arrest, appellant had in his pocket a “worn” and
“quite folded-up” wanted poster issued after the robbery that displayed a still
photograph from the bank’s surveillance video. 
Deputy Persand further testified that the picture of appellant used in
the photo-array is what he looked like in December 2009, when the array was
created.  Deputy Persand acknowledged
that appellant’s appearance had changed between the date of the photo-array and
the date of trial, but he agreed with the State that the picture in the array
was “still very clearly the defendant.”  Deputy
Persand also testified that at the time of trial, appellant wore his hair in a
“small Afro.”

          Rosita
Flores testified that both men initially walked to her teller station and
appellant stood there for “a few seconds” before he walked over to Rosa Crespin’s
station.  Onibokun told Flores that he
wanted to cash a check, and, when she asked him for his identification, he
pulled out a gun, pointed it at her, grabbed her hand, and told her to put all
of her money in a bag.  Onibokun was still
holding her hand when he turned to face Officer Marquez.  Flores hid under her station when the men and
Officer Marquez started firing their weapons. 
Appellant did not say anything to Flores, but she did see him display a
gun.  Flores stated that she identified
appellant as the man in the white hat while viewing the photo-array, and she
identified him a second time at trial.  She
testified that appellant wore his hair in a “mini-Afro” at the time of the
trial.

          Flores
also testified that she viewed the still photographs from the surveillance video
on the Internet on at least three different occasions before Officer Michael
showed her the photo-array.  She stated
that her out-of-court identification was based solely on her recollection of the
incident and not on the surveillance photographs that she viewed.  She agreed with defense counsel that she only
looked at the man in the white hat for a few seconds.

          Rosa
Crespin testified that she “[got] a really good look” at the men as they walked
into the bank and as they stood at Flores’s station.  She did not hear either man say anything as
they stood before Flores.  Appellant then
walked to her station, and “before [she] was able to push away, he grabbed
[her] hand.”  Appellant pulled out a gun
as he grabbed Crespin’s hand, pointed the gun at her, and told her to give him
her money.  Crespin stated that
appellant’s hat did not obstruct her ability to see his face because he was
standing so close to her station.  She
also testified that she watched the surveillance video of the robbery, but she
did not see this video until Onibokun’s trial,[2] and, therefore, it did not influence
her out-of-court identification of appellant. 
She further testified that appellant’s distinctive features included his
ears, which “stick out.”

          During
the guilt-innocence phase argument, the following exchange occurred:

[State]:                 So that’s why they put the
photo array together.  Let me show you
this.  I’ll walk this past you
one-by-one.  Here he is right here.  And if you look at him today, he’s gained
weight.  He doesn’t have his hair in
braids.  He is trying to cover his ears
maybe from you, but here is his picture.

 

[Defense counsel]:          Your Honor, I object to that being a
comment on                                      the defendant’s appearance.

 

The trial court overruled this objection.  Defense counsel did not object on the grounds
that the State’s argument was outside of the record or that it injected new and
harmful facts into the proceeding.

          The
jury found appellant guilty of the offenses of aggravated assault on a public servant
and aggravated robbery and assessed punishment at twelve years’ confinement for
each offense, to run concurrently.

 

Improper Jury Argument

A.  
Comment on Defendant’s Appearance

In his first issue, appellant
contends that the trial court erred in overruling his objection to the
prosecutor’s reference to appellant’s courtroom appearance during the
guilt-innocence phase argument.

          Proper
jury argument falls within four general categories:  (1) summation of the evidence, (2) reasonable
deduction from the evidence, (3) answer to argument of opposing counsel, and
(4) plea for law enforcement.  Gallo v. State, 239 S.W.3d 757, 767
(Tex. Crim. App. 2007).  To determine
whether the argument properly falls within one of these categories, we consider
the argument in light of the record as a whole. 
Sandoval v. State, 52 S.W.3d
851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).  We review a trial court’s ruling on an
objection to jury argument for an abuse of discretion.  See Cole
v. State, 194 S.W.3d 538, 546 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d) (concluding that trial court did not abuse its discretion in overruling
defense counsel’s objections to State’s arguments).

          A
prosecutor is permitted, during argument, to “draw from the facts in evidence
all inferences which are reasonable, fair and legitimate, but he may not use
jury argument to get before the jury, either directly or indirectly, evidence
which is outside the record.”  Jordan v. State, 646 S.W.2d 946, 948
(Tex. Crim. App. 1983); see also Cantu v.
State, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997) (holding that State has
“wide latitude” in drawing inferences from evidence, as long as inferences are
reasonable and offered in good faith). 
The State may call the jurors’ attention to that which they had an equal
opportunity to observe, provided that such information is reflected in the
record or is of such common occurrence “that its recognition requires no
expertise before proper comment thereon may occur.”  Jordan,
646 S.W.2d at 948.

          In Good v. State, the Court of Criminal
Appeals held that although the State may allude during argument to a testifying
defendant’s demeanor while he testified, the State may not reference the
defendant’s non-testimonial courtroom demeanor as evidence of guilt.  723 S.W.2d 734, 736 (Tex. Crim. App. 1986); see also Wead v. State, 129 S.W.3d 126,
130 n.8 (Tex. Crim. App. 2004) (“We have recognized that, during closing
argument at the guilt/innocence phase, a prosecutor may not properly comment
upon the defendant’s demeanor in the courtroom, since the defendant’s demeanor
in the courtroom is not evidence of guilt.”). 
The court noted that a defendant’s demeanor during a witness’s testimony
was not a proper subject for argument because “[i]t was not offered into
evidence through any legally recognizable method of proof.”  Good,
723 S.W.2d at 736.  “Allowing the State
to summarize appellant’s nontestimonial demeanor impermissibly placed appellant’s
demeanor before the jury through the prosecutor’s unsworn jury argument.”  Id.  The Court of Criminal Appeals has also noted,
however, that if the record reflects that the defendant “misbehaved or
conducted himself in the jury’s presence in an unacceptable manner,” this
conduct is a proper subject for discussion during argument.  See
Dickinson v. State, 685 S.W.2d 320, 323 (Tex. Crim. App. 1984).

          In
both Good and Dickinson, the prosecutor referred to the defendant’s orderly
non-testimonial behavior as evidence of the defendant’s lack of remorse and
contrition.  Good, 723 S.W.2d at 735; Dickinson,
685 S.W.2d at 322.  In both of these
cases, the record did not include admitted evidence concerning the defendant’s
actual courtroom behavior and demeanor.  Good, 723 S.W.2d at 736 (“Appellant’s
demeanor during the complainant’s testimony was not evidence subject to
reference by the prosecutor.”); Dickinson,
685 S.W.2d at 323 (“[W]e have yet to find, and the State does not refer us to
any place in the record, any act on the part of the appellant that might enable
us to conclude that he misbehaved or conducted himself in an improper manner
during the course of his trial.”); see
also Jordan, 646 S.W.2d at 947 (noting that record contained no evidence to
support prosecutor’s argument telling jurors to “look at the needle tracks on
[appellants’ arms]”).

          Here,
in contrast, the issue is not appellant’s demeanor but his appearance.  The record contained evidence that appellant’s
appearance had changed in between the time of the robbery and the time of his
trial.  See Van Zandt v. State, 932 S.W.2d 88, 93 (Tex. App.—El Paso 1996,
pet. ref’d) (holding, in case where evidence was admitted that defendant’s
appearance had changed between time of offense and time of trial, that although
“prosecutor’s comment concerning the proclivity of individuals charged with
crimes to change their appearance to thwart identification was speculative and
beyond the scope of the evidence at trial,” error was harmless given
complainant’s unobjected-to statement of identification).  Officer Marquez, who positively identified
appellant both in and out-of-court as the man who wore the white hat during the
robbery, testified that appellant’s appearance had changed since the offense.  Specifically, appellant had gained weight, he
had a goatee, and “[h]is hair [was] different.” 
Officer Michael, who created the photo-array, testified that at the time
of his booking photograph, which was the picture used for the photo-array,
appellant wore his hair in braids, which was an “unusual hairstyle” and made it
difficult for Michael to find five similar “fill-ins” for the array.  Officer Michael also agreed, when shown a
still photograph from the surveillance video on cross-examination, that the man
who wore the white hat had “protruding” and “prominent” ears.

          Deputy
Persand, who arrested appellant, agreed that the picture used in the
photo-array was what appellant looked like when he was arrested in December
2009, and, although appellant’s appearance had changed since his arrest, the
photo-array picture was still recognizable as appellant.  Deputy Persand also described appellant’s
hairstyle at trial as a “small Afro.”  Rosita
Flores, who also identified appellant as the man in the white hat both in and
out of court, agreed that appellant’s hairstyle at trial was a
“mini-Afro.”  Rosa Crespin, who also positively
identified appellant, testified that one of appellant’s distinctive features
was ears that “stick out.”  The trial
court admitted into evidence the photo-array, still photographs from the
surveillance video, and the surveillance video itself.

          Thus,
there is evidence in the record that, at the time of the offense, appellant
wore his hair in braids, which lay flat against his head and clearly displayed
his “protruding” and “prominent” ears. 
There is also evidence in the record that, at the time of the trial,
appellant had, in addition to gaining weight and growing a goatee, styled his
hair into a small “Afro,” a hairstyle that is full and puffy and that obscures
the ears.  As appellant acknowledges, the
sole factual issue in this case was the identity of the man wearing the white
hat during the robbery.  We therefore
conclude that the State’s argument that appellant’s appearance had changed and
that he was “trying to cover his ears maybe from [the jury]” is a reasonable
deduction from the evidence and, thus, constitutes proper jury argument.

          Even
if the State’s argument was improper and the trial court erred in overruling
defense counsel’s objection, we would hold that the error was harmless.  An erroneous ruling regarding comments made
during argument is non-constitutional error subject to a harm analysis under
Texas Rule of Appellate Procedure 44.2(b). 
Tex. R. App. P. 44.2(b); Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998).  We disregard any
non-constitutional error that does not affect a defendant’s substantial rights
by having a “substantial and injurious effect or influence in determining the
jury’s verdict.”  Jabari v. State, 273 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.]
2008, no pet.) (citing Morales v. State,
32 S.W.3d 862, 867 (Tex. Crim. App. 2000)); Tex.
R. App. P. 44.2(b).  We should not
reverse a conviction for non-constitutional error if, after examining the
record as a whole, we have “fair assurance that the error did not influence the
jury, or had but slight effect.”  Jabari, 273 S.W.3d at 754 (citing Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998)).

          When
determining whether the trial court committed reversible error in overruling an
objection to improper jury argument, we consider three factors:  (1) severity of the misconduct (the
magnitude of the prejudicial effect of the prosecutor’s remarks), (2) measures
adopted to cure the misconduct (the efficacy of any cautionary instruction by
the judge), and (3) the certainty of conviction absent the misconduct (the
strength of the evidence supporting the conviction).  Mosley,
983 S.W.2d at 259; Cole, 194 S.W.3d
at 547.

          Here,
the prosecutor stated that appellant had gained weight and changed his hairstyle
since the picture that was included in the photo-array.  The prosecutor then opined that “maybe”
appellant was trying to cover his ears from the jury.  Three eyewitnesses identified appellant as
the man who wore the white hat during the robbery.  Several witnesses testified without objection
that appellant had gained weight and that he had changed his hairstyle during
the time between the photo-array and the trial, and two witnesses testified on
cross-examination that the man who wore the white hat had distinctive
ears.  The prosecutor’s statement that “maybe”
appellant was trying to hide his distinctive ears from the jury was brief, and
he did not repeat this argument or belabor the inference that appellant deliberately
changed his appearance before the trial to cast doubt on his identity as a
participant in the robbery.  Instead, the
prosecutor focused on the fact that appellant had a well-worn copy of a wanted
poster from the robbery in his pocket when he was arrested and the fact that
three different eyewitnesses all positively and unequivocally identified
appellant as one of the robbers.  See Van Zandt, 932 S.W.2d at 92–93
(holding similar argument harmless even though prosecutor repeatedly argued
that defendant’s appearance had changed and that it was to “gang member” defendant’s
advantage to appear “nice and clean cut” at trial).

          Although
the trial court overruled defense counsel’s objection, and thus did not give a
curative instruction to disregard, the evidence supporting the verdict was so
strong that appellant’s conviction was certain even absent the alleged misconduct.  Three different eyewitnesses identified
appellant in-court as the man who wore the white hat during the robbery, even
though they all acknowledged that appellant’s appearance had changed since the
robbery.  Each witness testified that
during the robbery, they had a clear, unobstructed view of appellant.  These witnesses were unequivocal in their in-court
identifications.  All three witnesses
also unequivocally identified appellant out of court as one of the robbers
based on a photo-array.  The trial court
admitted into evidence the photo-array, still photographs from the bank’s
surveillance video, and the surveillance video itself.

          Considering
the record as a whole, we conclude that the prosecutor’s argument, even if
improper, did not influence the jury and thus was harmless error.  See id.
at 93 (“While the State, on several occasions, mentioned the proclivity of
individuals to change their appearance at trial, we fail to perceive how the
statements had much additional impact over the unobjected-to statement [of
identification] of the victim.”).

          We
overrule appellant’s first issue.

B.  
Argument Outside the Record

In his second issue, appellant
contends that the trial court erred in overruling his objection that the
prosecutor’s argument referencing his appearance was outside the record and
injected new and harmful facts into the proceeding.

To preserve error, an objection at
trial must comport with the complaint made on appeal.  See
Pena v. State, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (“To avoid
forfeiting a complaint on appeal, the party must ‘let the trial judge know what
he wants, why he thinks he is entitled to it, and to do so clearly enough for
the judge to understand him at a time when the judge is in the proper position
to do something about it.’  This gives
the trial judge and the opposing party an opportunity to correct the error.”)
(quoting Lankston v. State, 827
S.W.2d 907, 909 (Tex. Crim. App. 1992)). 
We have previously held that an appellant fails to preserve error when
he objects at trial that the State’s argument is a comment on the appellant’s
failure to testify but argues on appeal that the argument was outside of the
record.  See Coffey v. State, 744 S.W.2d 235, 239 (Tex. App.—Houston [1st
Dist.] 1987), aff’d, 796 S.W.2d 175,
180 (Tex. Crim. App. 1990) (finding our reliance on two past Court of Criminal
Appeals decisions holding same “well placed”); see also Hawkins v. State, 135 S.W.3d 72, 83 (Tex. Crim. App. 2004)
(“Appellant objected that the argument was a ‘misstatement of law,’ not that it was an improper attempt to
get the jury to apply parole law to appellant. 
The latter complaint was procedurally defaulted by appellant’s failure
to raise it in an objection.”) (emphasis in original).

At trial, after the prosecutor
argued that appellant was “trying to cover his ears maybe from [the jury,]”
defense counsel objected solely on the ground that this statement was a
“comment on the defendant’s appearance.” 
Defense counsel did not argue that this argument was outside of the
record or that it injected new and harmful facts into the proceeding.

We therefore conclude that by
failing to object to the trial court on the grounds that the State’s argument
was outside of the record and injected new and harmful facts, appellant has
failed to preserve this issue for appellate review.

We overrule appellant’s second
issue.

Modification of Trial Court Judgments

          We
observed that the trial court judgments fail to reflect that the jury made an
affirmative finding that appellant used a deadly weapon, a firearm, during the
commission of the offense.

An appellate court has the
authority to reform a judgment to make the record speak the truth when the
matter has been called to its attention by any source.  French
v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (holding that
appellate court could reform judgment to reflect jury’s affirmative deadly
weapon finding and adopting reasoning in Asberry
v. State, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref’d) (“The
authority of an appellate court to reform incorrect judgments is not dependent
upon the request of any party, nor does it turn on the question of whether a
party had or has not objected in the trial court.”)); see also Tex. R. App. P.
43.2(b) (allowing appellate court to modify trial court judgment and affirm as
modified).  “This power [to modify] includes
adding a deadly-weapon finding to a judgment that erroneously omitted a
factfinder’s deadly-weapon finding and deleting a deadly-weapon finding that
was erroneously entered in the judgment without a factfinder’s first having
made the finding.”  Cobb v. State, 95 S.W.3d 664, 668 (Tex. App.—Houston [1st Dist.]
2002, no pet.); see also Tex. Code Crim. Proc. Ann. art. 42.12,
§ 3g(a)(2) (Vernon Supp. 2010) (“On an affirmative [deadly weapon] finding
under this subdivision, the trial court shall enter the finding in the judgment
of the court.  On an affirmative finding
that the deadly weapon was a firearm, the court shall enter that finding in its
judgment.”).  “A jury, as the trier of
fact, makes an ‘express determination’ that a deadly weapon was used when it
(1) finds the defendant ‘guilty as charged in the indictment’ and the
indictment alleged the use of a ‘deadly weapon’ . . . .”  Edwards
v. State, 21 S.W.3d 625, 627 (Tex. App.—Waco 2000, no pet.).

          Here,
relative to the charge of aggravated assault on a public servant, the
indictment alleged that appellant “did then and there unlawfully intentionally
and knowingly threaten with imminent bodily injury P. MARQUEZ, hereafter called
the Complainant, while the Complainant was lawfully discharging an official
duty, by using and exhibiting a deadly
weapon, namely A FIREARM, knowing that the Complainant was a public
servant.”  (Emphasis added.)  The jury found appellant guilty of aggravated
assault on a public servant “as charged in the indictment.”  Similarly, for the aggravated robbery charge,
the indictment alleged that appellant “intentionally and knowingly threaten[ed]
and place[d] ROSA CRESPIN in fear of imminent bodily injury and death, and the Defendant
did then and there use and exhibit a
deadly weapon, to-wit:  A FIREARM.”  (Emphasis added.)  The jury found appellant guilty of aggravated
robbery “as charged in the indictment.”

          Thus,
the jury made an affirmative deadly weapon finding for both offenses.  See
French, 830 S.W.2d at 609 (noting that jury made affirmative deadly weapon
finding when indictment alleged “use of a deadly weapon, namely, a knife” and
jury found defendant guilty “as charged in the indictment”); Edwards, 21 S.W.3d at 627.  Both of the trial court judgments, however,
state:  “Findings on Deadly Weapon:  N/A.”

          We
therefore conclude that the judgments in trial court cause number 1247284,
appellate cause number 01-10-00784-CR, and in trial court cause number 1264436,
appellate cause number 01-10-00785-CR, should be modified to reflect the jury’s
affirmative finding that a deadly weapon, a firearm, was used.




 

Conclusion

          We
modify the judgment of the trial court in trial court cause number 1247284 and
trial court cause number 1264436 to reflect the jury’s affirmative finding that
a deadly weapon, a firearm, was used.  We
therefore modify the “Findings on Deadly Weapon” portion of both judgments to
state:  “Yes:  A Firearm.” 
We affirm both judgments as modified.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Massengale.

Do
Not Publish.  Tex. R. App. P. 47.2(b).











[1]
          See Tex. Penal Code Ann.
§§ 22.02(b)(2)(B), 29.03(a)(2) (Vernon 2011).  The charge for aggravated assault on a public
servant was tried in trial court cause number 1247284 and resulted in appellate
cause number 01-10-00784-CR.  The charge
for aggravated robbery was tried in trial court cause number 1264436 and resulted
in appellate cause number 01-10-00785-CR.





[2]
          Onibokun was convicted of
aggravated assault on a public servant and aggravated robbery.  The Fourteenth Court of Appeals affirmed the
convictions.  See Onibokun v. State, No. 14-10-00480-CR, 2011 WL 1466408 (Tex.
App.—Houston [14th Dist.] Apr. 19, 2011, pet. filed) (mem. op., not designated
for publication).