Geronimo **QUINTANILLA**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 47085.

Court of Criminal Appeals of Texas.

Nov. 21, 1973.

Servando H. Gonzales, Jr., McAllen, for appellant.

Oscar B. McInnis, Dist. Atty., Edinburg, Jim D. Vollers, State's Atty. and Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

RALEIGH BROWN, Commissioner.

Appeal is taken from a conviction for murder with malice. Punishment was assessed by the court at fifty (50) years.

In his first ground of error the appellant challenges the court's overruling his mo-

tion for an instructed verdict because of the insufficiency of the evidence to corroborate the testimony of the accomplice witness, Juan Ruiz.

Ruiz testified that on the night of the murder he had gone to the Astro Club in McAllen. As he sat in the Club, he saw the deceased standing just inside the entrance holding a beer. Noting the deceased's departure with two persons and having heard that appellant was trying to find a girl for the deceased, out of curiosity Ruiz went outside to see who appellant had procured. Rounding the south side of the building, the witness saw two persons hitting the deceased. They stopped as he approached. He noticed blood all over deceased's face. Although Ruiz was not well acquainted with appellant, he responded to appellant's demand to bring his, Ruiz's, car around the building. On appellant's orders the trunk of the car was opened and appellant and Roberto Gonzales put the deceased inside the trunk. Just prior to the time the deceased was being put in the trunk, Maria Ramos came around the building. She was led away by Rene Quintanilla.

The witness, Juan Ruiz, testified further that he then drove toward Mission, with the appellant and Roberto Gonzales. He turned into an orchard, stopped the car, opened the trunk and the deceased got out under his own power. After walking the deceased approximately fifty feet into the orchard during which time appellant was accusing the deceased of being a narcotics agent, the three hit the deceased. Appellant asked Ruiz if he had a tire tool or jack in the car. Ruiz answered he did not. Appellant then found a calking gun. Appellant hit the deceased some eight times about the head and face with the calking gun. Then he checked the deceased's pulse, put his ear to his chest and stated "he is through."

According to Ruiz's testimony, appellant then stripped the deceased, got some money, gave $20.00 each to him and Roberto Gonzales and threw deceased's clothes in the trunk of the car. They then dragged the body to a high grassy area, cut some grass and threw it on the body. The three then drove to the apartment of Ruiz, leaving the clothes wrapped in a newspaper there.

After washing the trunk of the car at a car wash in San Juan, the three drove to McAllen, where they left appellant at his mother's house. Ruiz and Gonzales then drove to Brownie's gasoline station and met by chance Rene Quintanilla, Andres Bocanegra, Maria Ramos and Consuelo Lomeli, whom Ruiz had seen at the Astro Club earlier in the evening. A trip to Mexico was discussed. The girls did not want to go so it was decided they would be taken home. Rene Quintanilla's car was left at his house. Everyone got in Ruiz's car.

Starting to Weslaco to take Maria home, someone asked if Ruiz had some "pot." Believing he did, Ruiz stopped by his apartment in San Juan to check. Maria, needing to use the bathroom, went into the apartment and saw the bloody clothes which had been left there earlier. When Ruiz tried to hide them, Maria stated, "Why hide it? I have seen the worst."

Finally, according to Ruiz, the girls were taken home, the men went to Mexico, returning at approximately 4:30 a. m. Ruiz, Andres Bocanegra and Roberto Gonzales then went to Ruiz's apartment, got the bloody clothes and drove about a mile and one-half south of San Juan, where they burned the clothes.

Article 38.14, Vernon's Ann.C.C.P., provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

This court has stated in Cherb v. State, 472 S.W.2d 273 (Tex.Cr.App.1971):

"The test of sufficiency of corroboration of the testimony of an accomplice witness is to eliminate the evidence of the accomplice from consideration and then examine evidence of other witnesses to ascertain if there be inculpatory evidence or evidence of incriminating character which tends to connect the accused with the commission of the offense. If there is such evidence, the corroboration is sufficient, otherwise it is not. Odom v. State, 438 S.W.2d 912 (Tex.Cr.App., 1969); Edwards v. State, 427 S.W.2d 629 (Tex.Cr.App., 1968); Dalrymple v. State, 366 S.W.2d 576 (Tex.Cr.App., 1963); Bradford v. State, 170 Tex.Cr.R. 530, 342 S.W.2d 319 (1960); Chavira v. State, 167 Tex.Cr.R. 197, 319 S.W.2d 115; Story v. State, 153 Tex.Cr.R. 541, 221 S.W.2d 917 (1949)."

■ Applying this test to the instant case, we first eliminate the testimony of Juan Ruiz, the accomplice. The remaining testimony, standing alone, must tend to connect appellant with the crime. We shall now examine the other testimony.

Maria Ramos testified that while she, Andy Bocanegra, Consuelo Lomeli and Rene Quintanilla were outside and near the entrance to the Astro Club on the night in question the appellant and Roberto Gonzales came out with the deceased and asked if she wanted to go out with the deceased. She refused. Appellant, Gonzales and the deceased went around the Astro building on the north side. Shortly thereafter, she, Rene Quintanilla and Andy Bocanegra went around the south side of the Astro building to tell Rene's brother that they were leaving. As they drew near an automobile, Maria testified she saw appellant, Roberto Gonzales and Andres Garcia hitting the deceased. She said further that Juan Ruiz, who was present, told Rene to take "me away from there so I wouldn't see anything." Maria testified the deceased was making no resistance,

and that he was put in the trunk of Ruiz's car. The trunk was closed with a "wire or a rope," they got into the car and started to leave, whereupon she left the scene.

Testifying further Maria Ramos verified the trip by Juan Ruiz's home in San Juan later on in the evening and the observation of the bloody clothes wrapped in a newspaper which Juan attempted to hide. She testified she said "Why hide it? I have seen the worst."

Baldemar Garcia and Ernestina Silva, employees of the Astro Club, each testified they observed the deceased and the appellant together at the club on the evening in question.

The record shows the body of the deceased was found in a citrus grove some four or five miles from the Astro Club. It had been stripped of most of its clothing, partly covered with grass and badly beaten about the head and face. All money and jewelry were missing.

This court held in Rogers v. State, 461 S.W.2d 399 (Tex.Cr.App.1970):

"The corroborating testimony need not be sufficient in itself to establish the guilt of the accused, for if this were true the testimony of the accomplice would be of no value. The evidence is sufficient if it tends to connect the defendant with the offense."

We feel the evidence is sufficient to connect the appellant with the offense. The first ground of error is overruled.

■ Appellant also challenges the failure of the trial court to instruct the jury that the witnesses Andres Bocanegra and Maria Ramos were accomplice witnesses as a matter of law. There is no evidence in this record that Maria Ramos is an accomplice witness, therefore, her testimony is proper corroboration of the accomplice witness Ruiz.

■ The testimony of Andres Bocanegra is not necessary to the corroboration

of the witness Ruiz. Miller v. State, 442 S.W.2d 340 (Tex.Cr.App.1969). Nowhere in the record is there any objection to the charge that the witnesses Bocanegra and Ramos were accomplice witnesses nor were special requested charges presented in writing to the court prior to the reading of the charge to the jury in accordance with Articles 36.14 and 36.15, V.A.C.C.P.

This court stated in Seefurth v. State, 422 S.W.2d 931 (Tex.Cr.App.1967):

"By failing to comply with the requirements of Articles 36.14 and 36.15, supra, at the trial itself appellant waived his right to have his objections and special requested charges considered. Scott v. State, 106 Tex.Cr.R. 376, 292 S.W. 891; Lopez v. State, 112 Tex.Cr.R. 517, 17 S.W.2d 807; Hanvy v. State, 144 Tex.Cr.R. 351, 162 S.W.2d 721; Arrisola v. State, 171 Tex.Cr.R. 369, 350 S.W.2d 551.

"  .  .  .

"These articles are mandatory and there must be strict compliance with their provisions. See Templeton v. State, 152 Tex.Cr.R. 121, 210 S.W.2d 168; Cedillo v. State, 165 Tex.Cr.R. 371, 307 S.W.2d 267; Hays v. State, 129 Tex.Cr.R. 156, 84 S.W.2d 1008."

The appellant's challenge comes too late.

■ Appellant contends in his second ground of error the court abused its discretion in permitting the State to introduce three enlarged photographs of the body of the deceased. The photographs depict the body as it was found at the scene of the crime.

This court stated in Johnson v. State, 489 S.W.2d 611 (Tex.Cr.App.1973):

"The picture in question shows the body as it was found and described by witnesses at the scene. We hold that the picture was admissible; adhering to our ruling in Martin v. State, Tex.Cr.App., 475 S.W.2d 265, wherein we stated:

" 'We hold that if a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. If a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible.'

"In this case a verbal description of the body and the scene are admissible, therefore, it was not error to admit the photographs."

This ground of error is overruled. The photographs did tend to corroborate the accomplice witness Juan Ruiz. They were competent, material and relevant to the issue on trial.

■ In his third and last ground of error, appellant urges the court erred in allowing the state's attorney to display a calking gun to the jury and to elicit testimony which was of no probative value and served only to inflame the minds of the jury. Ruiz testified that a calking gun shown him by the prosecutor "is almost exactly that same instrument we used" and "there doesn't seem to be any difference, because I can almost recall it being the same one." The calking gun was not admitted into evidence. There is no showing of bad faith on the part of the state's attorney.

This contention was answered by this court in Childs v. State, 491 S.W.2d 907 (Tex.Cr.App.1973):

"The weapon was not held out to be the one used in the robbery. We conclude, as we did in Ortega v. State, Tex.Cr.App., 462 S.W.2d 296, that, in the absence of bad faith, it is not error to ask a witness whether a particular weapon is similar to one used during the offense."

Having overruled all grounds of error, the judgment is affirmed.

Opinion approved by the Court.