**Delma BANKS, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 68933.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 3, 1982.

Rehearing Denied Jan. 5, 1983.

Clyde E. Lee, Texarkana, for appellant.

Louis J. Raffaelli, Dist. Atty., James Elliott, Asst. Dist. Atty., Texarkana, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of capital murder. The punishment is death.

The appellant contends that the evidence is insufficient to support the verdict. He further contends that the following error occurred: his motion for a change of venue was overruled; the jury panel was prejudiced by contact with the prosecutor's investigator; the appellant's right to a presumption of innocence was violated; two prospective jurors were improperly excused for cause; gruesome photographs and hearsay evidence were improperly admitted; and the prosecutor's argument during the opening and closing of the guilt-innocence stage of the trial was improper.

The appellant complains that the evidence is insufficient to support the verdict of guilt for the offense of capital murder. The case was submitted to the jury on a circumstantial evidence charge, but the appellant contends the evidence does not exclude all reasonable hypotheses except guilt. He also contends that evidence does not establish that the murder occurred in the course of committing a robbery. See V.T. C.A. Penal Code, Section 19.03(a)(2).

The body of the deceased, Richard Wayne Whitehead, was found in an abandoned park near Nash on the morning of April 15, 1980. The deceased had been shot three times, twice in the head and once in the upper back. One shot had been fired at a maximum distance of eighteen to twenty-four inches. Near the scene several empty beer cans and two spent shell casings were found.

Patricia Hicks testified that she was a friend of the deceased and that she was with the deceased during the evening of April 11, 1980. Whitehead was driving his automobile, a two-door 1969 Mustang with a light green colored body, a black vinyl top, and red hood. During the course of the evening the pair were joined by the appellant and at his suggestion beer was purchased. The three went to the park near Nash and drank beer. The appellant's residence was a little more than a half mile from the park. At approximately 11:00 or 11:15 p.m. Hicks was taken home.

Patty Bungardt testified that the appellant and the deceased visited her at her house around 11:30 p.m. on April 11. They stayed for approximately ten to fifteen minutes.

Mike Fisher testified that he lived about one hundred yards from the park in Nash. At approximately 4:00 a.m. on April 12, he heard two gun shots.

Charles Cook testified that he met the appellant on the morning of April 12 in Dallas. The appellant was driving a vehicle which had the same description as the deceased's. Cook and his wife befriended the appellant and allowed him to stay with them at Cook's grandfather's home. Cook had noticed a sprinkle of blood on the appellant's pants and asked the appellant about it. The appellant told him that he had shot a white boy. Later that evening the appellant told Cook that he had killed someone. The appellant told him he had been riding around with a white boy and his girl friend, and after they took the girl home he and the white boy went to the woods together and drank beer. The appellant decided to kill the person for the hell of it and take his automobile to Dallas. Cook eventually obtained a pistol and the automobile from the appellant. The pistol was later identified through ballistic testing as the murder weapon. The appellant later returned to Texarkana by bus. Cook sold the pistol to his neighbor and took the automobile to West Dallas and left it. It was never recovered. The pistol was recovered from the neighbor, Bennie Lee Jones.

Cook's wife and sister testified that they saw the appellant driving a green Mustang on April 12. Cook's grandfather stated that the appellant stayed at his house for a night or two. Cook's neighbor, Jones, also testified that he met the appellant during the same time. Appellant told him he had had a little misunderstanding with someone and had broken his jaw or "something like that." Appellant asked Jones "did I want

to buy any iron, whatever, to make it back to Texarkana."

After the deceased's body was found the appellant was placed under surveillance by law enforcement officers. On April 23 or 24 they observed the appellant, Marcus Jefferson, and Robert Farr, drive together from Texarkana to Dallas. The appellant was driving the vehicle and after a few stops he eventually went to where Cook resided. The officers watched appellant leave the automobile, walk to the front door and then return to the automobile carrying an object. Jefferson and Farr testified that when the appellant returned to the automobile he told them that Cook did not have his gun and Cook gave him another gun.

The appellant did not testify and did not present any evidence.

■ We conclude that the evidence is sufficient to establish that the appellant intentionally caused the death of Whitehead while in the course of committing robbery. *Autry v. State,* 626 S.W.2d 758 (Tex.Cr.App. 1982). Compare *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Cr.App.1977); *Flores v. State,* 551 S.W.2d 364 (Tex.Cr.App.1977). In addition to appellant's admission that he killed Whitehead and stole his vehicle the evidence shows that the appellant was the last person seen with the deceased when he was alive. The appellant was seen in the deceased's automobile in Dallas the following day. The murder weapon belonged to the appellant. The evidence is sufficient to support the jury's verdict.

The appellant asserts that the trial court abused its discretion in overruling his motion for a change of venue. The appellant properly filed the motion alleging that because of pretrial publicity there existed in Bowie County "so great a prejudice against him that he [could] not obtain a fair and impartial trial." See Article 31.03, V.A.C.C.P. The State filed an affidavit controverting the appellant's motion for change of venue. See Article 31.04, V.A.C. C.P. The trial court conducted a hearing and after all the evidence was presented, it overruled the appellant's motion.

■ Whether a motion for a change of venue should be granted because of prejudicial publicity is a question of constitutional dimension. *McManus v. State,* 591 S.W.2d 505 (Tex.Cr.App.1979). The test to be applied is whether outside influences affecting the community's climate of opinion as to a defendant are inherently suspect. *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1960); *Eckert v. State,* 623 S.W.2d 359 (Tex.Cr.App.1981); *Bell v. State,* 582 S.W.2d 800 (Tex.Cr.App. 1979), cert. denied 453 U.S. 913, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981). At the hearing the appellant testified that he could not get a fair trial "because it had been on T.V., television, newspapers since it happened." Two other witnesses testified that they were unaware of any prejudice toward the appellant in Bowie County and believed he could receive a fair trial. No evidence of the contents of any newspaper article or radio or television broadcast was presented. In view of the lack of evidence of any prejudicial publicity, we conclude that the trial court did not abuse its discretion. *Stiehl v. State,* 585 S.W.2d 716 (Tex.Cr.App. 1979), cert. denied 449 U.S. 1114, 101 S.Ct. 926, 66 L.Ed.2d 843 (1981); *Demouchette v. State,* 591 S.W.2d 488 (Tex.Cr.App.1979), cert. denied 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981).

■ The appellant asserts that the panel of prospective jurors was unduly influenced by the actions of Charles Leathers, an investigator of the district attorney's office. He testified that, prior to voir dire, he had been asked by the bailiff to help pass to veniremen clipboards with questionnaires on them. He was asked some questions by the panel members and added he probably had contact with approximately half of the panel. Appellant argues that Leathers' conduct developed a rapport with the prospective jurors and bolstered the credibility of the prosecution. However, Leathers testified that he told none of the veniremen his name or that he worked for the district attorney. He was subsequently seen with personnel from the Sheriff's Department and he did not testify before the jury. We

fail to see how the appellant was prejudiced by Leathers' conduct; the ground of error is without merit.

The appellant argues that error occurred when two deputy sheriffs attempted to escort the appellant out of the courtroom in the presence of the prospective jurors. During recess but before the panel had left the courtroom the appellant started to walk out of the courtroom. He was flanked on either side by a uniformed deputy sheriff. The appellant argues that their behavior was an infringement upon his right to a presumption of innocence because it indicated to the veniremen that the appellant was hostile and dangerous. However, the deputies did not put handcuffs on the appellant or restrain him in any manner. The appellant was not wearing jail or prison clothing. The judge and sheriff had expressed concern over security; they wanted the appellant removed from the courtroom first so that he would not have to be moved through crowded hallways. We conclude that in light of the minimal restraints on the appellant and the concern for security the trial court did not abuse its discretion. The appellant's right to a presumption of innocence was not violated. *Thompson v. State,* 514 S.W.2d 275 (Tex.Cr.App.1974); *Freeman v. State,* 556 S.W.2d 287 (Tex.Cr.App.1977), cert. denied 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794; *Caraway v. State,* 550 S.W.2d 699 (Tex.Cr.App.1977).

The appellant contends that two prospective jurors were improperly excused for cause by the trial court. The appellant relies upon *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) and *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

Juanita Marie Swanger on voir dire testified:

"Q. Then I take it that this is a deep-seated and firm conviction on your part, and one that you have probably given lots of thought to.

"A. Yes, sir.

"Q. And that this feeling on your part is so firm that you would automatical-

ly vote against the death penalty, regardless of what the facts were.

"A. Yes, sir.

"Q. And I take it that this feeling is so deep-rooted and deep-seated that no set of fact, no matter how horrible or how gruesome, would change your opinion. Is that correct?

"A. No."

Amy Ola Rogers on voir dire testified:

"Q. Is this feeling on your part so firm that you would automatically vote against the death penalty, regardless of what the facts of the case might be?

"A. Yes, sir."

Both prospective jurors were properly excused. *Witherspoon v. Illinois,* supra; *Adams v. Texas,* supra; *Vanderbilt v. State,* 629 S.W.2d 709 (Tex.Cr.App.1981); *Williams v. State,* 622 S.W.2d 116 (Tex.Cr.App. 1981); *Bass v. State,* 622 S.W.2d 101 (Tex. Cr.App.1981).

The appellant complains that the prosecutor's opening statement to the jury exceeded the scope of Article 36.01, V.A.C. C.P. by implying that the appellant had confessed to the crime. The prosecutor stated:

"I think you will see that this is a serious killing and that there was no need for Richard Wayne Whitehead to die. Delma Banks did kill Richard Wayne Whitehead, as he said, just for the hell of it."

However, the prosecutor stated twice without objection that the appellant had confided in Charles Cook and told Cook that he had killed the deceased and took his automobile. Furthermore, appellant's admission to Cook that he killed Whitehead for the hell of it was properly admitted in evidence. The opening remarks about evidence which was thereafter properly admitted did not constitute error. *Marini v. State,* 593 S.W.2d 709 (Tex.Cr.App.1980).

The appellant contends that four photographs were admitted in evidence solely to inflame the jury. The four photographs depicted the deceased and appellant asserts that the photos were enlarged. He

argues that their admission solved no issue and he relies in part upon *Whaley v. State,* 367 S.W.2d 703 (Tex.Cr.App.1963) and *Borroum v. State,* 168 Tex.Cr.R. 552, 331 S.W.2d 314 (1960). In *Martin v. State,* 475 S.W.2d 265 (Tex.Cr.App.1972) cert. denied 409 U.S. 1021, 93 S.Ct. 469, 34 L.Ed.2d 312 (1972), we held that even though a photograph was gruesome it would be admissible if a verbal description of the scene were admissible; we overruled the requirement that a gruesome photograph's admission in evidence tend to solve a disputed issue. Here a verbal description was admissible and therefore the photographs were admissible. While there is no evidence in the record that the photographs were enlarged, the mere fact that they may have been enlarged does not render them inadmissible unless the sole purpose in the enlargement is to inflame the minds of the jury. *Quintanilla v. State,* 501 S.W.2d 329 (Tex.Cr.App.1973).

The appellant next argues that prejudicial hearsay was improperly admitted in evidence. Marcus Jefferson testified he went with the appellant and Robert Farr to Dallas. They drove to the residence of Charles Cook, whose nickname was Two-two. The appellant walked up to the house while the pair remained in the automobile. When the appellant returned Jefferson testified that "He said that Two-two said some girl had his gun, and so Two-two gave him another gun." Appellant argues that this statement was inadmissible hearsay.

▮▮▮ Initially, we note that the State's next witness, Robert Farr, testified about the same conversation without objection. Farr testified, "He [the appellant] said his gun was in West Dallas, and Two-two gave him a .22." Since the evidence complained of was admitted without objection from another source, no error is presented. *Boles v. State,* 598 S.W.2d 274 (Tex.Cr.App.1980). Additionally, the appellant's statement to both Jefferson and Farr was admissible as an admission. The critical portion of the statement was based upon appellant's own personal knowledge. Furthermore, it is irrelevant that a portion of the statement was based upon hearsay since the appellant had adopted the statement as his own. 1A Ray, Law of Evidence, Section 1125.

The appellant asserts that the prosecutor alluded to the appellant's failure to testify. During his closing argument at the guilt-innocence stage of the trial the following transpired:

"Think about why Mr. Cooksey [the defense counsel] would want to call this a poor case. Drugs, all these rabbit trails, all those smoke screens that he wants you to hide behind and chase down. He wants you to think about anything except that sixteen year old boy with three bullet holes in him. Anything at all. The State has produced the only evidence in this case."

The appellant's objection that the argument alluded to the appellant's failure to testify was overruled. The prosecutor continued, stating:

"If I may pick up where I was interrupted, the only credible evidence in this case has been produced by the State."

Again, appellant's objection was overruled.

▮▮▮ The appellant argues that the prosecutor's remarks were a comment on his failure to testify and violated his rights under the United States Constitution and the Texas Constitution and violated Article 38.08, V.A.C.C.P. In order to violate the right against self-incrimination or Article 38.08, supra, the language, when viewed from the jury's standpoint, must be manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *Lee v. State,* 628 S.W.2d 70 (Tex.Cr.App.1982); *Angel v. State,* 627 S.W.2d 424 (Tex.Cr.App.1982); *Nowlin v. State,* 507 S.W.2d 534 (Tex.Cr.App.1974). It is not sufficient that the language might be construed as an implied or indirect allusion. *Nowlin v. State,* supra. If the remark called the jury's attention to the absence of evidence that only the testimony of the defendant could supply, the implication as a comment on the defendant's failure to testify is a necessary one and the conviction must be reversed. *Myers v. State,* 573

S.W.2d 19 (Tex.Cr.App.1978); *Angel v. State,* supra.

■ However, if the language used can be reasonably construed as referring to the appellant's failure to produce evidence other than his own testimony, it is not an improper remark. *Nowlin v. State,* supra. In the case at bar the prosecutor's remarks did not naturally and necessarily refer to the appellant's failure to testify. Here there was a myriad of evidence, other than his own testimony, that the appellant could have offered. The remark did not refer to any particular aspect of the case that only the appellant's testimony could refute. The language used was a comment on the failure to produce testimony other than his own. *Antwine v. State,* 572 S.W.2d 541 (Tex.Cr.App.1978); *Edmond v. State,* 566 S.W.2d 609 (Tex.Cr.App.1978); *Wood v. State,* 374 S.W.2d 896 (Tex.Cr.App.1964); *Nowlin v. State,* supra. The ground of error is overruled.

The judgment is affirmed.

ROBERTS, J., not participating.

CLINTON, Judge, dissenting.

It is true that what the majority opinion extracts from the 20 odd pages of voir dire examination of venirewoman Rogers, appears in the record. That its significance is to establish the State's entitlement to a challenge for cause on the ground of bias,[1] however, is unlikely. For after Rogers gave the excerpted response, it was fully explained to her by defense counsel that jurors in Texas do not "vote for" the death penalty, but instead, are to answer special questions according to the trial judge's instructions, by applying the evidence adduced. The effect of her answers were even explained in detail to Rogers by the trial judge. She nevertheless insisted several times thereafter that she would follow the judge's instructions, including answer the questions based on the evidence;[2] the ultimate question and answer which preceded her exclusion were:

> "Q: Mrs. Rogers, being a conscientious citizen of our county, you would, if chosen as a juror in this case or any case follow the judge's instructions, and you would answer any questions that the judge gives you from the evidence that you heard in the courtroom, wouldn't you?
>
> A: I certainly would."

Similarly, venirewoman Swanger—after hearing it explained that the jury's function is to answer questions that the judge asks about the evidence, "then the Judge, based upon those answers, imposes the sentence" —concluded her voir dire as follows:

> "Q: If seated as a juror in this case, and the Judge tells you from the evidence, answer these questions, would you follow the Judge's instructions?
>
> A: If seated, I would have to, wouldn't I?
>
> Q: Right. And so would you?
>
> A: If seated, I would."

From the majority's continuing application of the dictates of *Witherspoon v. Illinois,*[3] as a "ground of exclusion" in direct contravention of *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), I must disassociate myself. See my dissenting opinion in *May v. State,* 618 S.W.2d 333 (Tex.Cr.App.1981), *vacated and remanded,* 454 U.S. 959, 102 S.Ct. 497, 70 L.Ed.2d 374 (1981).

I dissent.

TEAGUE, J., joins.

---

1. Presumably, the basis for the exclusion upheld is bias, see Article 35.16(b)(3), V.A.C.C.P., but the majority opinion does not identify it.

2. Though she admitted that she might be "affected" by the knowledge of effects of her answers. .

3. 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).