# NO. 12-06-00205-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *VICKIE ELAINE WESSON,*<br>*APPELLANT* | § | *APPEAL FROM THE THIRD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *OPINION*

Vickie Elaine Wesson appeals her conviction of bribery, for which she was sentenced to imprisonment for eight years, probated for eight years. Appellant raises fifteen issues on appeal. We affirm.

### Background

Appellant was charged by indictment with bribery and pleaded "not guilty." The matter proceeded to jury trial.

The record shows that, on March 7, 2002, Appellant served the City of Palestine (the "City") in dual roles as both its tax assessor-collector and its customer service supervisor. As tax assessor-collector, she was responsible for collecting all taxes, including back taxes, owed to the City. As customer service supervisor, she was responsible for sending out invoices pertaining to what the City's water customers owed the City, collecting these invoices, and determining which rates to apply to different classifications of property in the City.

Robert Sherrill, Chief Financial Officer for the City, testified that he was Appellant's supervisor at the tax office. Sherrill testified that Appellant had the discretion to make adjustments to water rates when customers believed they were being improperly charged by the City. Sherrill also testified that he trusted Appellant to make these adjustments and would normally approve

adjustments Appellant made based upon his confidence in her integrity. Curtis Snow, who was the City Manager in March 2002, testified that it was the City's policy to first apply any customer refunds based on rate changes to delinquent accounts owed to the City.

On March 7, 2002, Helen Whaley, Connie Talley, Cheneya Farmer, and Jennifer Weisinger all worked under Appellant's supervision in the tax office. Each testified that Appellant knew the password to login to the computers they used to process payments made to the City to be applied toward tax and water invoices. Each of these tax office employees further testified that Appellant required them to leave their respective keys to their cash drawers so that she would be able to access the drawers in their absence. Each of the four also testified that one customer, Glinnis Utah "Dick" Thompson, would deal only with Appellant when he came to the tax office to pay his water and sewage bill.

On March 7, 2002, Thompson met with Appellant regarding his February 2002 water invoice. The invoice indicated Thompson had been billed at commercial water rates. Appellant represented to Sherrill that Thompson should have been charged at the residential rate and was, thus, owed a refund for the difference.

Sandra Ives, who was responsible for processing payments on behalf of the City, testified that Appellant came to her and asked that she immediately issue a check payable to Thompson in the amount of $7,183.71. Ives testified that this "quick check" was handled outside the normal procedure for refunds. Normally, all refund checks would be processed at one time for the entire week. Sherrill approved the issuance of this "quick check" by Appellant after Appellant presented it to him. Sherrill testified that he would not have approved it if he had known that Thompson owed money to the City for his back taxes. Sue Miles, who worked for a law firm collecting delinquent taxes on behalf of the City, testified that in 2002 Thompson owed the City $14,465.86 in delinquent taxes. Miles further testified that Thompson had been delinquent in his taxes since 1997.

That same day, Thompson issued a $1,000.00 check payable to the order of "V. Wesson." This check was cashed at the tax office. Frank Campos, auditor for the City, testified that it appeared as though someone had taken $1,000.00 out of the March 7 cash account in exchange for the $1,000.00 check. He stated that there was a check/cash differential of one thousand dollars in the tax office for March 7. Campos examined a receipt issued by the tax office on March 7, 2002 for

2

a $125.00 payment made on Appellant's delinquent water account. Campos testified that the receipt corresponded with the $1,000.00 check from Thompson made out to Appellant. However, tax office records showed that cash had been received for this $125.00 payment toward Appellant's water account.

Appellant's account statement for the month of March 2002 with MoPac Employees Federal Credit Union in Palestine, Texas was admitted as an exhibit at trial. The statement indicated that charges were being assessed against Appellant's account daily because the account was overdrawn during the first week of March 2002. However, on March 7, 2002, a cash payment of $300.00 was applied to Appellant's account.

Acting on his concern that there existed questionable financial dealings between Appellant and Thompson, Snow directed that an investigation into the matter be undertaken. Snow testified that he confronted Appellant about why Thompson had received the $7,183.71 refund when he owed the City double that amount in taxes. Snow stated that he was not satisfied with Appellant's explanation and informed her that he intended to terminate her based on her improper dealings with Thompson in her official capacities. Upon hearing this, Appellant resigned her positions with the City.

At the conclusion of trial, the jury found Appellant "guilty" as charged. Thereafter, the trial court sentenced Appellant to imprisonment for eight years, probated for eight years. Appellant timely filed this appeal.

### EVIDENTIARY SUFFICIENCY

In her sixth and seventh issues, Appellant contends that there was neither legally nor factually sufficient evidence to support the existence of an agreement between Thompson and Appellant. In her eighth and ninth issues, Appellant contends that the evidence was neither legally nor factually sufficient to support the remaining elements of bribery.

**Standard of Review and Governing Law**

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex.

3

App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the jury's verdict. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

On the other hand, in reviewing for factual sufficiency, we consider all the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Id.*; *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." *Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002); *see also Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (evidence is factually insufficient only when reviewing court objectively concludes that the great weight and preponderance of the evidence contradicts the verdict); *Sims v. State*, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003).

The sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the

4

indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of bribery if she intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another any benefit as consideration for the recipient's decision, opinion, or recommendation, vote, or other exercise of discretion as a public servant. *See* TEX. PENAL CODE. ANN. § 36.02(a)(1) (Vernon 2003). Section 36.02 focuses on the mental state of the public official who has accepted or agrees to accept a bribe in exchange for the exercise of her discretion. *See **Cerda v. State***, 750 S.W.2d 925, 927 (Tex. App.– Corpus Christi 1988, pet. ref'd). A defendant's culpable mental state can be inferred from circumstantial evidence, such as her words, acts, and conduct. *See **State v. Walker***, 195 S.W.3d 293, 300 (Tex. App.–Tyler 2006, no pet.) (citing ***Guevara v. State***, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004)).

## Legal Sufficiency

Appellant argues there was no direct evidence that she accepted a bribe from Thompson to influence her discretion as a public official. Appellant further contends that the circumstantial evidence of record is not enough to prove that she committed bribery.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury could have reasonably determined from both direct and circumstantial evidence that Appellant accepted $1,000.00 from Thompson in exchange for her use of discretion as a public official to benefit him at the expense of the taxpayers of Palestine, Texas. Snow testified that Thompson told him that the $1,000.00 check made out to Appellant on March 7, 2002 was given as a personal loan to Appellant. For Appellant to have given an immediate $7,183.71 refund check to Thompson when Thompson owed $14,465.86 in back taxes to the City while contemporaneously receiving $1,000.00 from Thompson was a perversion of her discretion. Thus, having considered both the direct and circumstantial evidence in the light most favorable to the jury's verdict, we hold that there existed legally sufficient evidence to satisfy the elements of bribery beyond a reasonable doubt.

## Factual Sufficiency

Appellant further contends that there was factually insufficient evidence to support that she

5

had taken $1,000.00 from a cash drawer of the tax office on March 7, 2002. Appellant notes that the $1,000.00 check from Thompson had been cashed through Weisinger's drawer. During trial, Appellant suggested that Weisinger or another of the clerks working in her office could have taken the cash from the drawer. But Weisinger and the other clerks testified that they had not taken $1,000.00 from any of the cash drawers in the office on March 7, 2002. Additionally, each of the clerks testified that Appellant knew their respective passwords necessary to login to their computers and had access to the keys to their respective cash drawers.

Appellant further contended at trial that if the State's position that she had used $125.00 from the $1,000.00 check from Thompson to pay toward her water bill with the City was true, the cash in the drawer should have been short only $875.00. This would conflict with the $1,000.00 shortage on March 7, 2002 about which Campos testified. However, Campos rebutted Appellant's contention, stating that Appellant could have taken $1,000.00 out of the cash drawer and then applied $125.00 to her water bill. Campos further testified that, alternatively, Appellant could have removed $875.00 only after satisfying the tax office's computer system that cash was received in issuing the receipt for the $125.00 payment. Either way, according to Campos, cash had been received in exchange for the receipt issued to Appellant.

Appellant also introduced evidence tending to demonstrate that the $300.00 cash payment made to MoPac Employees Federal Credit Union on March 7, 2002 could have come from a different source. Appellant's husband, Lonnie Wesson, testified that he sold a four wheeler on March 4, 2002 and gave the proceeds of the sale to Appellant. Thus, according to Wesson, these sales proceeds could have been the source of the $300.00 Appellant applied to her credit union account on March 7, 2002.

We have reviewed the record in its entirety. We iterate that our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony, *see Santellan*, 939 S.W.2d at 164, and where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See Van Zandt*, 932 S.W.2d at 96. The jury was presented with different versions of who could have taken the $1,000.00 out of the cash drawer of the City tax office on March 7, 2002. Appellant cast blame upon other City employees working under her supervision. Appellant also presented evidence to suggest an alternative manner

6

in which the cash payments on her water bill and to her overdrawn account with the credit union could have been made.

Nonetheless, the jury was entitled to determine the weight to be afforded the testimony of a witness and to resolve any conflicts in the evidence. *See Westbrook*, 29 S.W.3d at 111; *see also Watson*, 204 S.W.3d at 409. Our review of the record as a whole, with consideration given to all of the evidence both for and against the jury's finding, has not caused us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. Therefore, we hold the evidence is factually sufficient to support the jury's verdict. Appellant's sixth, seventh, eighth, and ninth issues are overruled.

## GRAVAMEN OF BRIBERY

In her second, third, fourth, and fifth issues, Appellant contends that it was legally and factually impossible for her to have committed bribery because the testimony at trial demonstrated that the exact rates to be charged for water under the City's ordinance could not be determined. Appellant therefore contends that the water rates as described in the City's ordinance were unconstitutionally vague.

Appellant's issues miss the mark. The gravamen or gist of the offense of bribery is the conferring of a benefit upon a public servant as consideration for her discretion being improperly applied. *See Gahl v. State*, 721 S.W.2d 888, 893 (Tex. App.–Dallas 1986, pet. ref'd). It is axiomatic that the public places its trust in governmental officials with the expectation that they will exercise the discretion given to them to benefit the citizenry. When that discretion is perverted by a bribe that results in special treatment of one citizen, public trust is corrupted and corroded. *See Cox v. State*, 316 S.W.2d 891, 894 (Tex. Crim. App. 1958).

The gravamen or gist of the State's case against Appellant was that Appellant exercised the discretion given to her by the City to benefit herself and Thompson at the expense of the City and its citizens by giving Thompson an expedited refund of $7,183.71 rather than applying it to the $14,465.86 tax bill as she was required by City policy to do. That same day, she received $1,000.00 from Thompson. The adjustment Appellant made to Thompson's water invoice, however it was to

7

be calculated, was not an essential underpinning of the bribery charge on which Appellant was convicted. Therefore, we need not consider Appellant's issues concerning the validity of the City's ordinance relating to water rates. Appellant's second, third, fourth, and fifth issues are overruled.

## VARIANCE IN NAME AT TRIAL AND IN INDICTMENT

In her first issue, Appellant contends that there was a fatal variance in the indictment with regard to Thompson's name. Specifically, Appellant argues that the indictment alleged that Appellant received a bribe from "Glinnis  Utah 'Dick' Thompson" while, at trial, Thompson was only referred to as "Dick Thompson." Thus, Appellant urges that there was no evidence at trial that she received a bribe from Glinnis Utah "Dick" Thompson as alleged.

When a person is known by two or more names, it shall be sufficient to state either name for purposes of allegations in the indictment. *See* TEX. CODE. CRIM. PROC. ANN. art. 21.07 (Vernon Supp. 2007). In the case at hand, the indictment alleges both of Thompson's given names, Glinnis Utah and his nickname, "Dick." Therefore, we conclude that no variance was shown and that there was sufficient proof to cause a rational person to conclude that Thompson had bribed Appellant as alleged in the indictment. *See **Lopez v. State***, 610 S.W.2d 764, 765 (Tex. Crim. App. 1981). Appellant's first issue is overruled.

## PROSECUTORIAL COMMENT ON APPELLANT'S FAILURE TO TESTIFY

In her tenth issue, Appellant argues that the prosecutor made an improper comment during jury argument on her failure to testify. Specifically, Appellant argues that the following prosecutorial statement violated her constitutional right to remain silent:

> .... But I think that all of that happened on March 7th. Well, I still go back to this receipt. This      receipt,  that's the first time we saw that was Tuesday. The first time we ever saw this check.
>
> Ladies and gentlemen, this case has been going on two years. If this evidence ... exonerates Mrs. Wesson, my goodness, do you think she would come to the police or told us, no, there is – wait a minute. I have got my receipt. I saved it. Do you think? How many receipts do you have that you can both put your hands on for a water bill four years ago?
>
> So Vickie Wesson has some evidence. What more does she have that she has still got over there?

8

To violate an appellant's constitutional and statutory rights, the objectionable comment, from the jury's perspective, "must be manifestly intended to be or of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify." *Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App. 1999) (citing *Banks v. State*, 643 S.W.2d 129, 134–35 (Tex. Crim. App. 1982)). If an accused does not testify on her own behalf, the fact cannot be made the subject of comment by the prosecution. *See Stafford v. State*, 578 S.W.2d 394, 395 (Tex. Crim. App. [Panel Op.] 1978). A comment on an accused's failure to testify violates the accused's state and federal constitutional privileges against self incrimination. *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). Such a comment also runs afoul of Texas Code of Criminal Procedure, article 38.08, which prohibits the State from alluding to or commenting on an accused's failure to testify. *Roberson v. State*, 100 S.W.3d 36, 40–41 (Tex. App.–Waco 2002, pet. ref'd). Calling attention to the absence of evidence that only the defendant could produce will result in reversal only if the remark can be construed or refer to the appellant's failure to testify and not the defense's failure to produce evidence. *See Fuentes*, 991 S.W.2d at 275.

In the instant case, we have reviewed the prosecutor's remarks in the context of his argument as a whole. Having done so, we find nothing alluding to anything about Appellant's failure to testify. The statements of which Appellant complains refer to how unusual it was for a person to save a receipt for a water bill she paid over four years prior. The prosecutor further questioned why Appellant had not turned over the receipt and any other exonerating documentary evidence in her possession to the authorities investigating the bribery allegations. Thus, we hold that the prosecutor's remarks do not naturally and necessarily refer to Appellant's failure to testify. *See id.* Appellant's tenth issue is overruled.

## PROSECUTOR'S USE OF A STORY IN CLOSING ARGUMENT

In her eleventh issue, Appellant contends that the prosecutor improperly referred to evidence outside of the record during his jury argument. Specifically, the prosecutor's statements to which Appellant refers are as follows:

> [PROSECUTOR]: My wife, in ... growing up she had different jobs. She did some cashier work. Because you can see that I can't add. I said, Dianne, what happens if as a cashier that you ring no sale.

9

| [APPELLANT]: | Your Honor, I am going to object. This is outside of the evidence what his wife told him. |
|---|---|
| THE COURT: | Overruled. |
| [PROSECUTOR]: | What happens when a cashier rings up no sale two or three times during a day? Or what happens if there is a mistake between the cash and the checks? Well, you are not working there much longer. Because they are going to be talking to you every day about why you – it may balance out, but no sales. Because that's how you steal. Maybe Mr. Swift can't figure that out. But that's the way that you take money out is to manipulate the cash and checks. Because it is all going to come out the same if it is a no sale or if it is a check. |

The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the admitted evidence alone. ***Fant-Caughman v. State***, 61 S.W.3d 25, 28 (Tex. App.–Amarillo 2001, pet. ref'd). Permissible jury argument falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *See **Gallow v. State***, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007).

Here, the remarks made by the prosecutor in closing argument fall into the third category—an answer to opposing counsel's argument. During both the presentation of evidence and jury argument, Appellant's counsel continually stated to the jury that the State's numbers did not add up. Specifically, Appellant's counsel said Campos's testimony that on March 7, there was a one thousand dollar difference between the cash the tax office had taken in and what was actually in the cash drawer at the end of the day was not correct. Appellant's counsel told the jury that if $125.00 had been applied to Appellant's water bill, there should be a difference of only $875.00 in the cash drawer after Thompson's check to Appellant was cashed.

Thus, in his response to Appellant's counsel's recently concluded jury argument, the prosecutor was attempting to show how a person with access to the cash register could have manipulated the funds therein. The prosecutor, throughout the trial, had indicated his lack of skill in mathematics. Therefore, he used a story about his wife to attempt to show what he perceived as a fallacy in Appellant's closing argument. We hold that the use of a story in this fashion is permissible jury argument and did not introduce new evidence into the proceeding. Appellant's eleventh issue is overruled.

## CUMULATIVE EVIDENCE

In her twelfth issue, Appellant contends that the trial court erred when it refused to allow her to introduce Campos's written billings into evidence. The State responds that Campos had testified the amount he had been paid by the City for his audit work and that the introduction of his actual billings would amount to cumulative evidence that was unnecessary for the jury to consider. We agree.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *See Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); *Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex. Crim. App. 1990). The trial court is in the best position to decide questions of admissibility, and we will uphold a trial court's decision to admit or exclude evidence if it is within "the zone of reasonable disagreement." *Rodriguez*, 203 S.W.3d at 841.

Texas courts have recognized cumulativeness as a factor that may allow the exclusion of relevant evidence. *Alvarado v. State*, 912 S.W.2d 199, 213 (Tex. Crim. App. 1995). The word "cumulative" suggests that other evidence on the same point has been received. *See id.* Although it may be relevant, evidence may be excluded by a trial court if its probative value is outweighed by the danger of needless presentation of cumulative evidence. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *see also* TEX. R. EVID. 403. Undue delay and needless presentation of cumulative evidence concern the efficiency of the trial proceeding rather than the threat of an inaccurate decision. *Casey*, 215 S.W.3d at 880.

In the case at hand, Appellant contends that the jury needed to know what Campos was being paid because his credibility was a factor in the case. As we have noted previously, the evidence concerning what Campos had been paid was presented to the jury through testimony. Yet, Appellant further sought to present documentary evidence to the jury concerning what amount Campos had been paid. The record indicates that even Appellant's counsel conceded that the record for just one year of Campos's billings to the City was "fairly lengthy." Thus, because Appellant has shown us no reason why the testimony about Campos's billings to the City for his services as its auditor was insufficient to allow the jury to judge his credibility, we decline to disturb the trial court's decision not to allow the documentary evidence. *See Montgomery*, 810 S.W.2d at 390–91; *see also Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Appellant's twelfth issue is overruled.

11

## RELEVANCE OF FINANCIAL CIRCUMSTANCES

In her thirteenth issue, Appellant contends that evidence of her other financial dealings with Thompson was irrelevant and that the trial court erred by admitting such evidence. Specifically, Appellant argues that the evidence regarding her promissory note with Elkhart State Bank, which Thompson cosigned, was irrelevant. Appellant further contends that the records of Thompson's tax delinquencies with the City were irrelevant and prejudicial. Finally, Appellant argues that the trial court's permitting testimony regarding Thompson's purchase of carpet from Appellant was also in error.

As before, we review the errors of which Appellant complains concerning admissibility of evidence for abuse of discretion. *See Rodriguez*, 203 S.W.3d at 841; *Montgomery*, 810 S.W.2d at 390–91; *see also Santellan,* 939 S.W.2d at 169. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Evidence is generally admissible unless there is a law or rule prohibiting it. *See* TEX. R. EVID. 402.

Evidence of a person's actions is admissible to prove motive. *See* TEX. R. EVID. 404(b). Furthermore, an accused's financial circumstances at the time of a purported crime is relevant because it assists the jury in determining motive. *See United States v. Anderson*, 933 F.2d 1261, 1274 (5th Cir. 1991); *see also United States v. Williams*, 264 F.3d 561, 575 (5th Cir. 2001) (financial circumstances of defendant can be relevant in determining motive and are, therefore, admissible). Thus, we hold that Appellant's financial dealings with Thompson were relevant evidence of her motive and, therefore, properly admitted by the trial court. Appellant's thirteenth issue is overruled.

## EXPERT TESTIMONY

In her fourteenth issue, Appellant argues that the trial court erred by permitting Campos and Michael Ohrt, an administrative assistant to the City Manager, to testify concerning the City's computer system without establishing their respective qualifications as expert witnesses pursuant to Texas Rule of Evidence 702.

To preserve a complaint for appellate review, a party must have presented to the trial court

a timely objection stating the specific grounds for the objection, if the grounds are not apparent from the context. *See* TEX. R. APP. P. 33.1. The objection at trial must comport with the issue raised on appeal. *See Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). The initial burden of establishing a witness's qualifications lies with the party offering the testimony. *See Matson v. State*, 819 S.W.2d 839, 852 (Tex. Crim. App. 1991). When a party wishes to challenge an expert's qualifications, it is incumbent upon that party to object and to demonstrate the witness's incompetency through voir dire. *Id.*

In the case at hand, Appellant objected as follows to Campos's qualifications:

| [Prosecutor]: | All right. It shows the balance at 55.37? |
|---|---|
| [Witness]: | That's correct. |
| [Prosecutor]: | All right. Now, what about that balance? Does that balance – if you want to reprint that receipt say today – |
| [Appellant's Counsel]: | Your Honor, I have an objection. I don't think that he is qualified to talk about that. He is not an expert on the [C]ity's computer program. |
| The Court: | Overruled. |
| [Prosecutor]: | Have you made yourself aware that the balance actually—it actually floats—not floats, but— |
| [Witness]: | It puts—whenever you print out that receipt, it's the actual balance of the day the receipt is printed. |

Appellant points out that Campos had no forensic experience. Therefore, she argues, Campos was not qualified to answer when the prosecutor asked him whether the unpaid balance shown on a printed receipt was current as of the date the receipt was printed. Appellant admits, however, that Campos was a CPA, and it is clear from the record that he was also the City's auditor. As the City's auditor, Campos undoubtedly was familiar with the City's accounting processes and the meaning of the information shown on its receipts. Therefore, Campos answered the prosecutor's question from his own personal knowledge and was not offering expert testimony.

With regard to Ohrt's qualifications, Appellant made the following objection:

| [PROSECUTOR]: | So we have encountered this situation where when the receipts were reprinted and a customer's balance was different than the original receipt. |
|---|---|
| | .... |
| | Can you explain why there would be a difference from the original receipt? |

13

| | |
|---|---|
| [APPELLANT'S COUNSEL]: | Your Honor, I have an objection. I don't think that he is qualified to answer this.... |
| THE COURT: | Overrule the objection. |
| [WITNESS]: | In taking a look at receipts, I was actually asked to reprint one today that initially transpired in I want to say either '02 or '03. And when I reprinted that receipt[,] all of the information was the same except for the account balance. The balance or the balance remaining that showed up on the receipt was a balance remaining on today's date. |

We first note that Appellant's objection to Ohrt's testimony was not the broad objection pursuant to Rule 702 that she has raised on appeal. *See* TEX. R. APP. P. 33.1 (party must present to trial court a timely objection stating the specific grounds for the objection, if the grounds are not apparent from context); *see also* **Broxton v. State**, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (objection at trial must comport with issue raised on appeal). Moreover, the record does not reflect that Appellant attempted to demonstrate Ohrt's incompetency through a voir dire examination. *See* **Matson**, 819 S.W.2d at 852. Appellant's general objection that Ohrt was not qualified, without more, did not suffice to bring the substance of Appellant's complaint to the trial court's attention. *See id.* Thus, in light of the fact that Appellant did not seek to demonstrate Ohrt's incompetency through a voir dire examination, we hold that Appellant failed to preserve the error, if any of which she now complains with regard to Ohrt's qualifications as an expert witness.[1] Appellant's fourteenth issue is overruled.

## CUMULATIVE ERROR

In her fifteenth issue, Appellant contends that the combination of errors that occurred during trial resulted in an unfair trial and an improper verdict. While it is conceivable that a number of errors may be found harmful in their cumulative effect, nonerrors may not by their cumulative effect cause error. *See* **Owens v. State**, 96 S.W.3d 668, 673 (Tex. App.–Austin 2003, no pet.) (citing

---

[1] Appellant's chief complaint with regard to Ohrt's testimony is that it "allowed the admission of Exhibit 18, which should have been excluded . . . [and] was extremely damaging." Although we recognize that Ohrt's testimony was not limited to his statements regarding State's Exhibit 18, we note that Appellant herself sponsored and secured the admission of State's Exhibit 18, and thus, is estopped on appeal from complaining of its alleged erroneous admission. *See* **Prystash v. State**, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999); **Heidelberg v. State**, 36 S.W.3d 668, 672 (Tex. App.–Houston [14th Dist.] 2001, no writ) (citing **Ohler v. United States**, 529 U.S. 753, 755, 120 S. Ct. 1851, 1853, 146 L. Ed. 2d 826 (2000)).

*Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999)).

Here, in analyzing Appellant's preceding fourteen issues, we have not held that the trial court committed error. Therefore, there can be no cumulative error. *Id.* Appellant's fifteenth issue is overruled.

### DISPOSITION

Having overruled each of Appellant's fifteen issues, we *affirm* the trial court's judgment.

    JAMES T. WORTHEN
Chief Justice

Opinion delivered May 30, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)